**GENERAL ELECTRIC COMPANY and its Division General Electric Supply Company, Appellants,**

v.

**Curtis T. KUNZE, Appellee.**

No. 10–87–058–CV.

Court of Appeals of Texas, Waco.

Dec. 10, 1987.

Rehearing Denied Jan. 7, 1988.

George P. Parker, Jr., Matthews & Branscomb, San Antonio, for appellants.

John L. Hand, Waco, David W. Anderson, Anderson and Johnson, Marlin, Paul E. Knisely, Spivey, Grigg, Kelly & Knisely, Austin, for appellee.

HALL, Justice.

Appellee Curtis T. Kunze recovered a judgment for damages on jury findings to the effect that his employers, appellants

General Electric Company and its division General Electric Supply Company (hereinafter collectively called G.E.), discharged Kunze from his employment in violation of article 8307c of the Texas Worker's Compensation Statutes. The judgment awarded Kunze $100,000 for lost past wages, $195,000 for future lost wages, $53,800 for lost past retirement and other benefits, and $50,000 for future lost retirement and other benefits. The jury also found that General Electric Supply Company acted willfully and maliciously in terminating Kunze and awarded him $120,000 exemplary damages.

Kunze began his career with the General Electric Company in Houston in December 1961, remaining there until 1978. In June of 1978 he transferred to G.E.'s office in Baton Rouge, Louisiana, and remained there until he transferred to General Electric Supply Company in Waco in July 1979. Kunze held the position of inside salesperson with the Waco division. Three days after he began work in Waco, he suffered an injury to his back while working in the warehouse. As a result of this injury, Kunze was out of work from July 1979 to November 1979. Mrs. Doris McPherson, his supervisor in Waco, began assisting Kunze in November 1979 in an effort to help Kunze receive his worker's compensation payments. However, he did not begin receiving compensation checks until January 1980.

In the latter part of January 1980, Kunze began receiving various collection letters as a result of the medical treatments he had sought. This prompted him to request a pre-hearing conference with the Industrial Accident Board that was held on February 5, 1980. During this meeting the worker's compensation insurance company, Electric Mutual Insurance Company, refused to pay Kunze's bills. Kunze returned to work and relayed to McPherson what had transpired at the meeting and stated that he was going to get an attorney to handle his claim. Kunze testified that in response to this McPherson became very upset and told him that he could not hire an attorney because it would be the same as suing G.E., and that following this McPher-

son's attitude toward him changed and she began to complain of almost everything he did.

Three days after the pre-hearing conference, the first of eight letters was sent from McPherson to Bob Lochridge at Dallas, manager of regional operations including supervision of the Waco area, criticizing Kunze's work performance. The first letter was sent on February 8, 1980, the last on April 30, 1980. Kunze testified that he was unaware of these letters and was never shown the letters or counseled concerning his performance. On April 30, 1980, McPherson executed an employee evaluation form on Kunze for the period from November 19, 1979, to the day of the report that rated his performance as unsatisfactory in the eight categories listed for consideration and rated his "overall" performance as "unacceptable." This evaluation was never provided to Kunze. On May 5, 1980, Kunze was fired from his position by Lochridge at a meeting attended by Lochridge, McPherson, Kunze and two other company employees. Lochridge informed Kunze of customer complaints that Lochridge said had been lodged against him and of the unsatisfactory evaluation prepared by McPherson. Lochridge would not produce these documents, although Kunze requested to see them.

McPherson testified that she never told Kunze he could not hire an attorney, and that she did not become upset with him because he planned to hire an attorney. Her testimony primarily established Kunze as a poor worker who had trouble with almost everything he undertook. She further testified that Kunze was not fired because he filed a worker's compensation claim, but was fired because of his poor performance.

This appeal was brought forward on twenty points of error and one crosspoint. All are overruled, and the judgment is affirmed.

In point of error one, G.E. complains that the trial court erred in excluding evidence regarding Kunze's unsatisfactory job performance at G.E.'s Baton Rouge facility

prior to his employment in the Waco division.

After the trial court granted Kunze's motion in limine precluding any references to his prior work performance, G.E. perfected four bills of exception demonstrating Kunze's job performance as unsatisfactory during his tenure at Baton Rouge. The testimony was provided by three G.E. employees who worked with Kunze in the Baton Rouge facility, along with the cross-examination of Kunze concerning his employment there. G.E. then offered the evidence for the purpose of showing Kunze was fired from his position with the Waco division because of his poor work performance and not because he filed a worker's compensation claim, and to rebut an alleged inference raised by Kunze's evidence that he was a good employee.

G.E. asserts the evidence should have been admitted because it was relevant: (1) to rebut an inference raised by Kunze that he had been a satisfactory employee while working for the company for a nineteen-year period; (2) to the issue of how much Kunze would have earned in lost future wages and benefits; and (3) to corroborate G.E.'s evidence that Kunze was fired because of his poor work performance.

■ G.E. contends Kunze and his attorney created an inference that Kunze had a good work performance history with G.E. by referring repeatedly to Kunze's nineteen-year tenure with G.E. G.E. urges that the testimony excluded by the trial court concerning Kunze's alleged poor performance while in Baton Rouge was relevant to rebut that inference. We disagree. No mention was made by Kunze of the quality of his work during his tenure with the company. Any inference of good performance implied merely by a nineteen-year tenure was so slight that it did not justify rebuttal. Moreover, the excluded evidence was not relevant to the reason why Kunze was fired from his position with the Waco division. G.E. asserted Kunze was fired because his job performance in Waco was poor, not that he was fired because his performance in Baton Rouge and Waco was poor. Kunze's su-

pervisors in Waco testified that they had no knowledge of his work history prior to his starting with the Waco division and that they understood that Kunze had wanted to move to Waco because he had grown up in Waco and not because of problems with work at Baton Rouge.

G.E.'s contention that the excluded evidence was relevant to determine the amount of future wages and benefits Kunze would have received was not preserved for review because the evidence was never offered for that purpose. Vernon's Tex.Rules Evid.Rule 105(b). It was offered by G.E. only to show that Kunze was fired because of a poor work record. Point of error number one is overruled.

Special Issue No. 1 read:

Do you find from a preponderance of the evidence that at least one factor in the termination of Curtis Kunze was that he:

1. filed a worker's compensation claim, or

2. hired a lawyer to represent him in the claim, or

3. instigated a proceeding under the Texas Worker's Compensation Act, or

4. continued to prosecute his worker's compensation?

The jury answered this issue, "Yes."

In points two and three G.E. asserts that there was no evidence or the evidence was factually insufficient to support the jury's affirmative answer to Special Issue No. 1. G.E. also contends in point twenty that the jury's answer to this special issue should be set aside because the finding that "at least one factor" in Kunze's termination was that he engaged in one or more of the four acts specified in Special Issue No. 1 does not establish liability under article 8307c, Vernon's Ann.Civ.St. In deciding a question of "no evidence," we may consider only the evidence that tends to support the finding. The evaluation of a "factually insufficient" evidence point requires consideration of all the evidence. *Burnett v. Motyka,* 610 S.W.2d 735, 736 (Tex.1980).

Kunze was hired by the Waco division in July 1979 as an inside salesperson. Ap-

proximately three days after being hired by the Waco division, he suffered an injury to his back which kept him out of work for approximately three to four months. He did not receive any worker compensation checks until about January 1980. He testified his supervisors did not complain of his work when he initially returned.

Kunze began receiving overdue statements and various collection letters in reference to his medical bills and requested a pre-hearing conference with the Industrial Accident Board. The pre-hearing was held on February 5, 1980, and the worker's compensation insurance company, Electric Mutual Insurance Company, refused to pay the bills. He returned to work and told his supervisor, McPherson, what had transpired at the meeting and that he would have to get an attorney to take care of his claim. In response to this, according to Kunze, McPherson became very upset and told him he could not hire an attorney because it would be the same as suing G.E. He said that her attitude toward him then changed and she thereafter complained about much of what he did. On April 30, 1980, McPherson filled out a performance review on Kunze, finding him unacceptable in every category of the evaluation. This was never shown to Kunze.

■ Kunze was eventually fired on May 5, 1980. He was told of his unsatisfactory evaluation and complaints from customers, but these were never shown to him although he requested to see them. He testified that he believed he had been performing acceptably and that his discharge might have resulted from his injury and pursuit of his worker's compensation claim. Co-workers testified that they didn't recall any major complaints from customers concerning Kunze; that there was a strained relationship between Kunze and McPherson; and that they were unaware of any poor performance or bad attitude on Kunze's part. We hold that there was evidence sufficient to support the jury's answer to Special Issue No. 1 by showing a causal connection between Kunze's discharge and the worker's compensation claim.

G.E. provided evidence primarily through Doris McPherson, the manager of customer services in the Waco office, that upon Kunze's return to work following his injury he showed a lack of interest in learning his job; that he was confused about procedures; that he had problems with minimum billings; and that Mrs. McPherson had received numerous complaints from customers about him. She further testified that she was not aware that Kunze had gone before the Industrial Accident Board or had hired a lawyer until after he had been terminated.

G.E. also offered into evidence portions of the deposition of Bob Lochridge, manager of regional operations that included supervision over the Waco district. He testified that Kunze's work performance was generally unfavorable. However, he admitted that he had never personally observed Kunze's work, but drew his opinion from reports and evaluations made by McPherson. Lochridge also testified that there were complaints about Kunze, and that the termination had nothing to do with Kunze's worker's compensation claim.

Considering all of the evidence, we hold the jury's answer to Special Issue No. 1 was supported by factually sufficient proof. Points two and three are overruled.

■ This court has held that an employee has a cause of action if he is discharged because he filed a worker's compensation claim, even though this was not the only reason for his discharge. *Santex, Inc. v. Cunningham*, 618 S.W.2d 557, 560 (Tex. Civ.App.—Waco 1981, no writ). See also *Azar Nut Co. v. Caille*, 720 S.W.2d 685, 687 (Tex.App.—El Paso 1986), aff'd, 734 S.W.2d 667, 669 (Tex.1987). Point twenty is overruled.

In points four through seven, G.E. complains the trial court erred in awarding Kunze future damages because as a matter of law Kunze was required to first seek reinstatement and because there was no evidence or the evidence was factually insufficient to establish that reinstatement would not have been an appropriate remedy. The thrust of appellants' arguments under these points is that article 8307c

required Kunze to seek reinstatement or prove that reinstatement was not a reasonable alternative before being entitled to an award of future damages.

 Our Supreme Court has ruled that lost future wages are recoverable under article 8307c. *Carnation Co. v. Borner*, 610 S.W.2d 450, 454 (Tex.1980). In the opinion, the Court noted that there is no restriction in the statute on the elements of damages which may be recovered. Id. Therefore, we hold that Kunze was not required to seek reinstatement as a prerequisite to being awarded future lost wages under the statute. The jury found that G.E. willfully and maliciously discharged Kunze in violation of the statute. We hold and find that there was evidence that was factually sufficient to establish that reinstatement would have been impracticable. Points four through seven are overruled.

 G.E. complains against the awards for lost future wages and benefits, arguing that there was no evidence or the evidence was factually insufficient to show that Kunze would have continued working for G.E. for the remainder of a fifteen-year work expectancy assumed by Kunze's expert witness for projecting future lost wages and benefits. We disagree. Kunze's economist witness, Dr. James Franklin Potts, made the assumption using a mortality table that Kunze had a fifteen-year work-life expectancy. Kunze testified that he was very interested in his job because it was in his hometown and that he wanted to work for General Electric the rest of his life. The jury was entitled to believe this testimony. Points eight and nine are overruled.

 G.E. argues there was no evidence or the evidence was factually insufficient to support the jury's award of past and future fringe benefits of $103,800 because Dr. Potts testified that, in calculating fringe benefits, he used an average value of 35% of wages that was taken from a United States Chamber of Commerce table for the industry in which Kunze was employed and that he made no effort to determine what percentage of wages G.E.'s benefits amounted to. We disagree. The

jury's findings on damages were also supported by Kunze's own testimony about his wage history at G.E. and his earnings since the time of his discharge. Dr. Potts, a professor of finance at Baylor University, testified concerning Kunze's past and future lost wages and benefits. G.E. made no attempt to refute the testimony either by pointing to any errors he made in his calculations or by offering another expert witness to testify differently. Moreover, because G.E. did not object to the witness's assumptions at any time, the complaint has not been properly preserved for appellate review. *PGP Gas Products, Inv. v. Fariss*, 620 S.W.2d 559, 560 (Tex.1981). Points ten and eleven are overruled.

In points twelve, thirteen, and fourteen, G.E. complains that there was no evidence or the evidence was factually insufficient to support the amounts of the damages awarded and that the awarded damages are excessive because Dr. Potts figured Kunze's salary as $16,000 in 1980 when in fact Kunze testified that his salary was $15,000. Primarily, G.E. complains Dr. Potts used the wrong base salary figure of $16,000 in making his wage loss calculations rather than $15,000 testified to by Kunze.

Dr. Potts' testimony was unimpeached and admitted without objection. Kunze did testify that in 1980 he was making $15,000 per year. Dr. Potts testified that he assumed Kunze's lower base salary to be $15,000 and that he understood that Kunze had received a cost of living raise. However, there was no supporting evidence that Kunze had received a cost of living raise. G.E. complains that because of this Dr. Potts' testimony provided incompetent testimony.

 Rule 703, Texas Rules of Evidence permits an expert to form his opinion based on inadmissible hearsay if the hearsay is of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject. See also HOUS.L.REV., Texas Rules of Evidence Handbook, Rule 703, p. 467 (1983). We hold the testimony in question was admissi-

ble under this rule, albeit subject to refutation. Moreover, G.E. failed to preserve this complaint for review on appeal by failing to object at trial. *PGP Gas Products, Inv. v. Fariss, supra.* Points twelve, thirteen, and fourteen are overruled.

In points fifteen through nineteen, G.E. complains that the court erred in awarding Kunze exemplary damages because article 8307c does not authorize the award of exemplary damages; that there was no evidence or the evidence was factually insufficient to support the amount of the jury's award for exemplary damages; and that there was no evidence or the evidence was factually insufficient to support the jury's finding that G.E. acted willfully and maliciously.

■ Our Supreme Court recently held that exemplary damages are recoverable under article 8307c of the Worker's Compensation Act. *Azar Nut Co. v. Caille,* 734 S.W.2d 667, 668 (Tex.1987). Following the guidelines set forth in *Burnett v. Motyka, supra,* we hold and find that the evidence was legally sufficient and factually sufficient to support the jury's finding that G.E. acted willfully and maliciously and to support the award of exemplary damages. Points fifteen, sixteen, seventeen, eighteen, and nineteen are overruled.

■ By way of cross point, Kunze asserts the trial court erred in refusing to grant him prejudgment interest as a matter of law on his actual damages of lost past wages of $100,000 and lost past employee benefits of $53,800. G.E. asserts the trial court was correct in denying Kunze's request for prejudgment interest because Kunze's economic expert, Dr. Potts, had already compounded interest on the damages which were awarded by the jury.

In calculating Kunze's past damages, Dr. Potts considered what Kunze would have earned in salary and benefits during the years 1980–1986, then subtracted the salary Kunze had drawn from other employers during this period. After making this deduction, Dr. Potts arrived at the following figures as representative of Kunze's lost past wages and benefits: 1980–$12,043; 1981–$14,085; 1982–$15,374; 1983–$16,437;

1984–$17,294; 1985–$18,463; and 1986–$19,453. Dr. Potts then testified as follows:

And then since those losses had occurred in the past, to be able to compare past dollars to current dollars you have to consider the fact that if you had had that money in the past that you would have been able to reasonably expect to earn some rate of return on it, and so I assumed that he would have invested this money had he had it at that point in time in a riskless investment like a six month certificate of deposit which offers the lowest rate of return usually of any type of investment.... And so what I did was to take a 12 percent rate for the first loss and compound that forward. The same thing for the second year, then 10 percent on the third year and the fourth year and 9 percent on the fifth and 7 percent on the eighth, and, of course, none on the last year since it would have only been earned by the year end at this point in time, so no compound interest at all on that. So to bring it up to present value terms for past losses, I just simply added in the opportunity cost of the rate of return that could have been earned on that money had it been had at the point in time.

After compounding interest for the amounts lost in each year over the entire six-year period, Dr. Potts then calculated Kunze's past lost wages and benefits as: 1980–$23,773; 1981–$26,057; 1982–$22,443; 1983–$21,861; 1984–$20,547; 1985–$19,755 and losses in 1986 as $19,453. These figures total $153,892 for the six-year period. Dr. Potts further testified that when that amount was broken down, approximately $100,000 represented lost past wages while $53,865 represented lost past benefits. Pursuant to Dr. Potts' recommendations, the jury awarded Kunze $100,000 in lost past wages and $53,800 in lost past benefits.

Clearly, Dr. Potts included interest in calculating the total amount of Kunze's losses. The jury awarded the amounts Dr. Potts projected which included compounded interest. We hold Kunze received prejudg-

ment interest as projected by his expert economist, Dr. Potts. Therefore, the court did not err in denying his request and his counterpoint is overruled.

The judgment is affirmed.