**James Milton THOMAS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 09–88–311 CR.**

Court of Appeals of Texas, Beaumont.

June 7, 1989.

Douglas M. Barlow, Beaumont, for appellant.

Tom Maness, John R. DeWit, Beaumont, for State.

## OPINION

BROOKSHIRE, Justice.

The Appellant was indicted for the offense of attempted capital murder of a peace officer, one Donald Jay Call, by intentionally shooting a gun in the direction of a peace officer engaged in the lawful discharge of his official duty, knowing at the time that the Complainant was a peace officer. *TEX.PENAL CODE ANN. sec. 15.01* (Vernon Supp.1989) and *sec. 19.03* (Vernon 1989). Appellant pleaded not guilty, waived his right to a jury trial, in writing, and was tried by the court. The trial judge, after hearing the evidence, found the Appellant guilty of attempted capital murder as alleged in the indictment. He further made an affirmative finding that Appellant used and exhibited a deadly weapon during the commission of the offense. The trial judge, after hearing the arguments of counsel, assessed punishment at life imprisonment in the Texas Department of Corrections. Appellant brings four points of error.

A correct narrative, as presented in the record, is as follows. Three Beaumont Police Department officers testified that they were engaged in the pursuit of a beige van, in which four males were occupants. The persons inside the van were believed to have stolen the van, and had also been allegedly involved in stealing a Cadillac automobile, along with some T-tops and wheels. Officer William Shows of the Beaumont Police Department testified that upon sighting the van, he and an officer with him, one Scott Spidell, gave chase down Fourteenth Street in Beaumont. Officer Shows testified that they chased the van onto Cherokee Lane, a continuation of Fourteenth Street. At that point the van stopped, and the squad car with Officers Shows and Spidell halted behind them. Officer Shows stated that as they were emerging from the squad car the van suddenly backed up and rammed the squad car, rendering the car immobile. Officer Spidell was apparently struck on the shoulder by his open passenger door when the van rammed the squad car. Officer Shows stated that the van sped to the end of Cherokee Lane, a dead end street. Officer Shows then testified that he saw the van move into a semi-wooded lot and, while the van was still moving, four people jumped out of the van and ran to the fence bordering the Chevyland car dealership.

Carla Aguilar, who at the time of the offense was a Beaumont Police Officer, testified for the State. She stated that she was on duty at the time, and responded to a dispatch stating that the van in question was sighted behind the Chevyland dealership. She testified that she drove her squad car to the front entrance of the used car parking lot at Chevyland in an attempt to cut off the fleeing suspects. Ms. Aguilar stated that she began a search of the lot, and found a black male whom she identified as Appellant in the lot. She testified that she ordered Appellant to halt and place his hands on a van parked in the car lot which he did. She said that she was in regulation uniform and was driving a marked patrol car. Ms. Aguilar said she then informed Appellant he was under arrest and she holstered her service revolver, which she had initially drawn on Appellant when she first apprehended him.

Ms. Aguilar testified that she radioed the dispatcher that she had Appellant in custody. She waited for another patrol officer to arrive to serve as backup. At that point she stated that Appellant came off the van and grabbed her arms. Ms. Aguilar said that Appellant struck her several times with his fists on the right side of her face at the temple, which caused her to become dazed. The Appellant wrestled her service revolver from her holster. The struggle for the gun resulted in an injury to her right hand which caused bleeding.

Ms. Aguilar testified that she was told by Appellant not to move. He pointed the gun straight at her, which she said was fully loaded. She said that she managed to get back to her car, from which she radioed that Appellant had taken her gun. She then testified that she tried to take cover behind the van where Appellant had first been arrested, but Appellant continued to follow her with the gun pointed at her. Ms. Aguilar stated that this continued until she heard gunshots and she saw other police officers on the scene.

Officer Donald Call, also of the Beaumont Police Department, then took the witness stand for the State. He testified that he responded to the dispatcher's call concerning the fleeing felons located behind the Chevyland dealership. He further stated that when he arrived at the Chevyland entrance he saw Officer Aguilar, pulled into a neighboring entrance, and upon hearing Officer Aguilar call for help over the radio, he returned to the place where he first had seen Officer Aguilar.

Officer Call testified that he saw a black male, whom he identified as Appellant, run out from behind the van, on the other side from where Officer Aguilar was taking cover. He stated that as he was getting out of his squad car, Appellant stopped running, aimed a revolver at him, and fired one shot at him. The shot struck the side rear-view mirror of the squad car, on the driver's side, directly in front of Officer Call's chest. Officer Call then said that he ran clear of the car and returned fire with three shots, one of them striking and wounding Appellant. He testified that at that point Appellant surrendered and was thereupon taken into custody.

Appellant testified in his own defense. He stated that his older brother, one Kevin Thomas, picked him up at his home in Houston to take him to visit his sister in Beaumont. He said that he had no knowledge about any thefts of a car, or auto parts, nor did he know that the van was stolen. He testified that he was not familiar at the time with the other two passengers in the van, identified as Patrick Jones and Michael Hubbard.

Appellant stated that he was not aware of any trouble with the police until a Beaumont police officer began pursuing them. He stated that when the van was stopped in the area behind Chevyland, he was told by his brother to get out of the van and run from the police which he did. He admitted climbing the fence into Chevyland, but said that when he saw Officer Aguilar, he simply walked up to her and gave himself up.

Appellant claimed that Officer Aguilar told him to put his hands on a truck parked on the lot, whereupon he asserted that she began beating him with her flashlight. He stated that he then disarmed Officer Aguilar, only to protect himself, and that when Officer Call arrived, Call was the first to shoot, firing the shot that wounded Appellant. Appellant said he fired one return shot, but after Officer Call fired twice more, Appellant surrendered. He insisted that Officers Aguilar and Call, not he, were the provocateurs in the incident. However, the trial judge, acting as trier of fact, exercised his power to weigh the credibility of the witnesses and chose to accept the testimony of Officer Call and former Officer Aguilar over that of Appellant. *Mattias v. State*, 731 S.W.2d 936 (Tex.Crim.App.1987).

■ In Appellant's first two points of error, which he consolidates in the argument in his brief, he complains that the trial court erred in admitting testimony of the thought processes of former Officer Aguilar, allowing her, as a result, to give improper opinion testimony. The objected-to testimony, made during redirect examination by the prosecution, transpired as follows:

"BY MR. MCWILLIAMS:

"Q  Mr. Sekaly asked you if the defendant could have shot you. Did it run through your mind what he was going to do with you?

"MR. SEKALY: Objection, your Honor, of her mental workings.

"THE COURT: OVERRULED.

"BY MR. MCWILLIAMS:

"Q  You can answer that.

"A Yes, sir, one of two things. He was either going to shoot me or take me hostage.

"Q In your opinion, did he have to follow you around that van?

"A No, sir.

"Q Was he literally stalking you?

"A Yes, sir."

■ Appellant asserts that former Officer Aguilar's testimony, which interpreted the actions of Appellant, was tantamount to expressing an opinion as to the guilt or innocence of Appellant, which is prohibited. *Boyde v. State*, 513 S.W.2d 588 (Tex.Crim.App.1974). However, it is clear that under *TEX.R.CRIM.EVID. 701* a lay witness is allowed to give opinion testimony if those opinions are rationally based on the perception of the witness and helpful to a clear understanding of her testimony or the determination of a fact in issue. Furthermore, such testimony is admissible even if it embraces an ultimate issue to be decided by the trier of fact. *TEX.R.CRIM. EVID. 704*. Also, it is permissible for a police officer to give an opinion concerning physical facts he has observed which are within his experience. *Smith v. State*, 683 S.W.2d 393, 404 (Tex.Crim.App.1984). The facts underlying the issues contained in Appellant's points of error one and two are directly addressed by the authority cited above. *See Byrum v. State*, 762 S.W.2d 685, 690 (Tex.App.—Houston [14th Dist.] 1988, no pet.). Furthermore, while Appellant urges that all of the above quoted testimony was improper, he objected only once, and raised no objection to the prosecutor's last two questions. Therefore, the last two questions present nothing for review. *Cisneros v. State*, 692 S.W.2d 78, 82 (Tex.Crim.App.1985). In failing to so object to the prosecutor's last two questions and Ms. Aguilar's three responses, Appellant waived any error allegedly made in admitting the officer's first response. *Hudson v. State*, 675 S.W.2d 507, 511 (Tex.Crim.App.1984); *Byrum v. State, supra.* Even if inadmissible testimony was elicited, a presumption exists in a bench trial that the trial judge would not consider inadmissible evidence in arriving at a judgment.

*Morgan v. State*, 692 S.W.2d 877 (Tex.Crim.App.1985); *Byrum v. State, supra.*

In addition, the objection "of her mental workings," to the first question posed to Ms. Aguilar, is vague, unspecific, and fails to properly state the grounds for the objection under either point of error. Therefore, nothing is preserved for review. *Hinkle v. State*, 442 S.W.2d 728 (Tex.Crim.App.1969). If an objection made in the trial court differs from the complaint made on appeal, a defendant has not preserved any error for review. Appellant's contentions are without merit. Points of error one and two are overruled.

■ In his third point of error Appellant asserts that the trial court erred in failing to obtain a pre-sentence investigation report (PSI) prior to sentencing. After the presentation of evidence and testimony, the trial court found the defendant guilty of the offense charged and made an affirmative finding that a deadly weapon was used in the commission of the offense. The trial judge acknowledged that the parties had agreed to a PSI report, but then stated that there was no reason to do so, citing the fact that the Appellant's criminal and family history were on record. Defense counsel agreed. Upon request by the trial judge, Appellant's counsel recommended that a sentence of five years imprisonment be assessed against Appellant, while the prosecution recommended a life sentence. The trial judge assessed punishment at life imprisonment in the State Department of Corrections.

The applicable statute regarding the obtaining of a PSI report is *TEX.CODE CRIM.PROC.ANN. art. 42.12* (Vernon Supp.1989). In subsection (b), the court is not required to direct a probation officer to prepare a PSI report if: (1) the defendant requests that a report not be made, and the court agrees; or, (2) the court finds sufficient information in the record to allow a meaningful exercise of discretion in sentencing the defendant and the court explains that finding on the record. *Article 42.12, sec. 4(b)(1), (2), supra.*

In *Stewart v. State*, 732 S.W.2d 398 (Tex.App.—Houston [14th dist.] 1987, no pet.),

the Court of Appeals held that an affirmative finding of a deadly weapon precludes the right to probation. *TEX.CODE CRIM. PROC.ANN. art. 42.12, sec. 3g* (Vernon Supp.1989). The same Court of Appeals had held in *Steens v. State*, 681 S.W.2d 767 (Tex.App.—Houston [14th Dist.] 1984, no pet.), that the trial judge, in an aggravated robbery case, properly acted in declaring that sufficient information existed to permit proper sentencing, provided he explained his reasons on the record. The Court went on to say that the term "explain" in *Article 42.12, sec. 4(b)(2)* does not mean that the trial judge is required to state all the factors entering into his consideration. *Steens, supra*, at 769. In *McGhee v. State*, 747 S.W.2d 446 (Tex.App. —Houston [14th Dist.] 1988, no pet.), the Court followed both *Steens* and *Stewart*. It held that the trial judge acted correctly when, after stating that sufficient information existed to allow proper sentencing discretion, he declared that he took judicial notice of the evidence adduced at the guilt-innocence phase, as well as the defendant's prior burglary convictions. *Id.*, at 449. Further, the Court held that once the Appellant was found guilty of aggravated sexual assault, *Article 42.12, sec. 3g(a)* prohibited probation, and a PSI report would have served no useful purpose under such circumstances. *Id.*, at 450.

In the case before us, there was a finding of the use of a deadly weapon by the court, precluding the possibility of probation under *Article 42.12*. In the instant case the trial judge stated that a PSI report was unnecessary, regardless of the fact that the parties had agreed that one be conducted. He stated that the proper evidence was before him, as was Appellant's criminal history and family history. The Appellant's counsel agreed with the trial judge's conclusion, stating, "I guess we pretty well developed everything, Your Honor." In essence, the court found sufficient evidence to permit meaningful sentencing discretion, the finding was explained on the record, and Appellant's counsel agreed. The requirements of *Article 42.12, sec. 4(a), (b)* were met. Appellant's point of error three is overruled.

Appellant's fourth point of error alleges that the trial court erred in finding that a deadly weapon was used in the commission of the offense. He asserts that the indictment failed to give adequate notice that the State intended to seek an affirmative finding that a deadly weapon was used. The indictment alleged:

"James Thomas, ... did then and there with intent to commit Capital Murder, attempt to cause the death of Donald Jay Call, hereafter styled the Complainant, a peace officer in the lawful discharge of an official duty, *by intentionally shooting a gun* in the direction of the Complainant, knowing at the time that the Complainant was a peace officer...." (Emphasis supplied.)

Appellant urges that a "gun" is not a deadly weapon per se, nor does the indictment specifically and affirmatively allege, in a separate paragraph or special plea, that a deadly weapon was used. *Patterson v. State*, 740 S.W.2d 766 (Tex.Crim.App.1987). Therefore, Appellant urges reversal, or in the alternative, that the recitation of the use of a deadly weapon in the judgment be deleted from the judgment and sentence.

*TEX.PENAL CODE ANN. sec. 1.07(a) (11)* (Vernon 1974) defines a deadly weapon as:

"(A) a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury; or

"(B) anything that in the manner of its use or intended use is capable of causing death or serious bodily injury."

In *Chavez v. State*, 657 S.W.2d 146 (Tex. Crim.App.1983), the Court held that the allegation in an indictment for murder alleging the cause of death by "shooting with a gun," set forth an instrument which in the manner of its use or intended use, under *Section 1.07(a)(11), (B)*, is capable of causing death or serious bodily injury. *Id.*, at 147–48. Therefore, the Court held the indictment sufficiently notified the defendant that he was charged with the use of a deadly weapon. *Id.*, at 148.

In *Ex parte Carrasco*, 750 S.W.2d 222 (Tex.Crim.App.1988), the Court of Criminal

Appeals held that the defendant had proper notice in the indictment of the charge of use of a deadly weapon in the commission of murder. The Court did so on two points: (1) it found that a "handgun," the weapon alleged in the indictment, is a deadly weapon per se; and (2) the defendant was placed on sufficient notice by the allegation in the indictment that the defendant committed murder "by shooting the complainant with a handgun." *Id.*, at 225; *see Ex parte Franklin*, 757 S.W.2d 778, 784 (Tex.Crim. App.1988).

Therefore, we find that the allegation in the indictment of "shooting a gun in the direction of the Complainant," sufficiently alleges use of a deadly weapon under *TEX. PENAL CODE ANN. sec. 1.07(a)(11)(A), (B)* (Vernon 1974). Appellant's point of error number four is overruled.

In summary, all of Appellant's points of error are overruled. The judgment and sentence of the trial court is in all particulars, correct. The judgment is affirmed.

AFFIRMED.