Ethicon 



 IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-91-285-CV





ETHICON, INC.,



 APPELLANT


vs.





ALMA MARTINEZ,



 APPELLEE



 




FROM THE DISTRICT COURT OF TOM GREEN COUNTY, 119TH JUDICIAL

DISTRICT


NO. CV90-0518-B, HONORABLE ROYAL HART, JUDGE PRESIDING



 




 Following a prehearing conference at the Industrial Accident Board and a $12,000
workers' compensation award, Alma Martinez, a ten year employee, was discharged by her
employer, Ethicon, Inc. Martinez sued Ethicon for wrongful discharge in violation of article
8307c of the workers' compensation statute, which prohibits an employer from discharging an
employee for filing a workers' compensation claim or receiving workers' compensation benefits. 
See Tex. Rev. Civ. Stat. Ann. art. 8307c (Supp. 1992). A jury found that Ethicon had violated
the Texas Workers' Compensation Act and awarded Martinez actual and exemplary damages. The
district court rendered judgment for Martinez and Ethicon appeals. We affirm the judgment of
the district court.




THE CONTROVERSY



 Ethicon employed Alma Martinez for ten years as a channel swagger. Ethicon
makes sutures, and a channel swagger puts the needle and the suture together. It is a repetitive-motion job, as are most of the jobs at the plant. Martinez's job required her to make the same
wrist movement over 7000 times per day. Repetitive-motion injuries are common at Ethicon. 
Martinez eventually developed pain in her wrist.

 In September 1987, Martinez went to Dr. Stanley Taylor, the plant's Medical
Director, complaining of pain in her left wrist that she had developed at work. After examining
and interviewing Martinez, Dr. Taylor referred her to Dr. Thomas Reid, an orthopedic surgeon. 
Dr. Reid diagnosed Martinez as suffering from de Quervain's syndrome, a constriction of the
sheath surrounding a tendon in the wrist causing inflammation and pain. De Quervain's syndrome
is associated with repetitive-motion trauma. Dr. Reid performed surgery on Martinez's left wrist
to alleviate the pain and released her to return to work in October 1987.

 Later, Martinez noticed a problem at a different place in the same wrist. She
reported the problem to Ethicon's medical department and was again referred to Dr. Reid. She
saw Dr. Reid in January 1988; he felt a small nodule and suspected a ganglion cyst. She saw him
again in March, when she described pain radiating up into her forearm. In April she reported
that, when placed on a less strenuous job, she did not have problems, but the pain recurred when
she returned to her old job. Dr. Reid saw her again in May, and in June he diagnosed a ganglion
cyst.

 Martinez had surgery to remove the cyst in July 1988. Ethicon placed her on
medical leave from July 5 until November 28, 1988, when she returned to work for the last time. 
While she was on leave, the scar tissue began to bother her, and Dr. Reid removed the scar tissue
on October 25th.

 Martinez returned to work at Ethicon on Monday, November 28, 1988. On
Tuesday, November 29th, she went to Ethicon's medical department, complaining of pain and
swelling in her left wrist. The following day, Dr. Taylor prescribed a conservative course of
therapy for Martinez: she was to undergo paraffin treatments three times a day, (1) wear a wristlet
while working, and wear a thermal glove when she was not at work. Dr. Taylor saw Martinez
again on Thursday, December 1, 1988. His report states, "Wrist appears normal. Scar well
healed. No swelling. Alma states she hurt only Tuesday, very minor discomfort Wednesday and
today. Getting paraffin. Given wristlet and thermal gloves. To wear gloves at all times except
at work. Will recheck in a.m. S.K.T." Based upon his examination, Dr. Taylor concluded that
Martinez was able to continue working with only minor discomfort.

 On the following Monday, December 5th, Alma Martinez attended an Industrial
Accident Board prehearing conference, which forms the crux of the present controversy. 
Martinez had filed a workers' compensation claim in conjunction with her wrist injury and
subsequent surgery. She was represented by an attorney. Although not required to, Dr. Taylor
accompanied Edwin Thurston and Mike Wilson, both Ethicon Safety Department employees, to
the prehearing conference. The parties dispute the statements made at the informal prehearing
conference concerning Martinez's continued pain and discomfort in her wrist. Regardless, the
workers' compensation claim settled for $12,000.

 It was the practice of Gary Loudamy, the plant's Personnel Manager, to hold a
debriefing after Industrial Accident Board proceedings. Loudamy supervised Dr. Taylor,
Thurston, and Wilson. Thus, when Dr. Taylor, Thurston, and Wilson returned to the plant, they
went directly to Loudamy's office to report the results of the prehearing conference.

 During that meeting, Dr. Taylor told Loudamy what Martinez and her attorney had
said about Martinez continuing to experience pain in her left wrist. Dr. Taylor recommended to
Loudamy that Martinez be placed on medical disqualification, which is tantamount to discharge
since the employee's injuries are considered so serious that she will never be expected to return
to work.

 Pat Merrill, Dr. Taylor's physician's assistant, testified that after his meeting with
Loudamy, Dr. Taylor stormed into the medical department, slammed the door behind him, and
exclaimed, "Damn it. Alma got $12,000 and I'm not going to let her back in the plant." 
Dr. Taylor had done the same thing once before when another employee received an award from
the Industrial Accident Board. Dr. Taylor proceeded to draft the medical disqualification memo
that Ethicon used as the basis for discharging Martinez. Mrs. Merrill testified that in her opinion,
based upon what she observed, the Industrial Accident Board award influenced Ethicon's decision
to discharge Martinez.

 That evening, Dr. Taylor called Alma Martinez at home and told her not to clock
in the next day, but to report directly to the medical department because she would not be able
to work. When Martinez reported the next morning, she was immediately taken upstairs to the
management offices and given a copy of Dr. Taylor's memo saying she was medically
disqualified. Martinez argued that she could work and that she had done her regular work the
previous week. Martinez protested that she had been with the company ten years. The Ethicon
personnel officials had a security guard escort her out of the plant.

 Two days later, on December 8th, Dr. Reid again examined Martinez's wrist and
said it appeared quite well. He gave her two doctor's statements saying that she had recovered
nicely from her wrist surgery and that she should be capable of performing her normal work
activities. Martinez tried to submit these statements to Ethicon. Some months later, she talked
to Dr. Taylor, asking to be recalled, or at least given a medical review. Dr. Taylor promised to
see what he could do, but she never heard from him again.

 Alma Martinez sued Ethicon, alleging that the company had violated article 8307c
of the Texas Workers' Compensation Act entitled "Protection of claimants from discrimination
by employers" which provides in pertinent part:


 Section 1. No person may discharge or in any other manner discriminate against
any employee because the employee has in good faith filed a claim, hired a lawyer
to represent him in a claim, instituted, or caused to be instituted, in good faith, any
proceeding under the Texas Workers' Compensation Act, or has testified or is
about to testify in any such proceeding.



 Following a trial, the jury found that Ethicon discharged Martinez in violation of
the Texas Workers' Compensation Act, that her actual damages were $163,500, that Ethicon acted
willfully or maliciously in discharging her, and that exemplary damages in the amount of
$900,000 should be assessed against Ethicon for its failure to act fairly and in good faith. The
trial court rendered judgment on the verdict. Ethicon duly perfected this appeal alleging three
points of error: (1) the trial court erred in admitting the lay-opinion testimony of the witness, Pat
Merrill; (2) the evidence was legally and factually insufficient to support the jury finding that
Ethicon discharged Martinez in violation of the Texas Workers' Compensation Act; and (3) the
evidence was legally and factually insufficient to support the jury finding that Ethicon acted
willfully or maliciously and the exemplary damages awarded were excessive.



DISCUSSION



Lay Opinion Testimony



 One of Martinez's key witnesses was Pat Merrill, who at the time of Martinez's
discharge was a medical assistant to Dr. Taylor. Merrill testified to her personal observations of
Dr. Taylor's conduct following the Industrial Accident Board prehearing conference and his
subsequent plant meeting with Loudamy. Merrill recounted Dr. Taylor's angry response to
Martinez's Industrial Accident Board award: "Damn it. Alma got $12,000 and I'm not going to
let her back in the plant." She described assisting Dr. Taylor in drafting the medical discharge
memo. She overheard Dr. Taylor's telephone conversation that evening with Alma Martinez
wherein he told her to report directly to the medical department rather than to her job because she
was unable to work. Merrill also testified that Dr. Taylor had similarily disqualified another
Ethicon worker who received a workers' compensation settlement. At the conclusion of Merrill's
direct examination she answered the following question asked by Martinez's counsel:


 Q. Mrs. Merrill, do you have an opinion as to whether Ethicon's decision to
disqualify Alma Martinez from employment was influenced in any way by
the fact that she had obtained a settlement at the Industrial Accident Board
hearing that day?


 A. Yes.


 Q. What is that opinion?


 A. My opinion is, it was influenced by the fact that she got a settlement.



In its first point of error, Ethicon contends that the admission of this question and answer
constitutes reversible error on the part of the trial judge. We reject this argument because (1) the
testimony was proper and admissible, and (2) the testimony was, at best, cumulative of other
unobjected-to testimony, and therefore was harmless.

 1. Admissibility of Testimony

 Martinez contends Pat Merrill's opinion that the Industrial Accident Board
settlement award influenced Ethicon's decision was properly admitted under Tex. R. Civ. Evid.
Ann. 701 (Pamph. 1992). Rule 701, titled "Opinion Testimony by Lay Witnesses," provides: 


 If the witness is not testifying as an expert, his testimony in the form of
opinions or inferences is limited to those opinions or inferences which are (a)
rationally based on the perception of the witness and (b) helpful to a clear
understanding of his testimony or the determination of a fact in issue.



 Rule 701 provides for the admissibility of opinions or inferences of a witness not
testifying as an expert. Prior to testifying to an opinion or inference, the witness must first lay
a foundation establishing personal knowledge of the facts which form the basis of the opinion or
inference. The opinion or inference of the witness must be rationally based on the witness's
perception, meaning only that it must be one which a person could normally form from observed
facts. Finally, the testimony of a lay witness in the form of an opinion or inference must be
helpful to a clear understanding of the witness's testimony or to the determination of a fact in
issue. M. H. Graham, Handbook of Federal Evidence, § 701.1 at 602-04 (3d ed. 1991). See also
Steven Goode, Olin Guy Wellborn, III & Michael Sharlot, Guide to the Texas Rules of Evidence:
Civil and Criminal, 33 Texas Practice § 701.2 (1988); 3 J. B. Weinstein and M. A. Berger,
Weinstein's Evidence, # 701[02] (1990).

 The admission or exclusion of evidence during the trial is left to the sound
discretion of the trial court. See Syndex Corp. v. Dean, 820 S.W.2d 869, 873 (Tex. App. 1991,
writ denied). We review the admitted evidence using the abuse of discretion standard. 
Steenbergen v. Ford Motor Co., 814 S.W.2d 755, 760 (Tex. App. 1991, writ denied). Martinez
contends that pursuant to Rule 701, the trial court did not abuse its discretion in admitting the
question and answer in issue. We agree. Pat Merrill's opinion was directly based upon her
personal observations of Dr. Taylor's conduct. She also testified to a prior related incident where
Dr. Taylor medically discharged another Ethicon employee under the same or similar
circumstances. Finally, Merrill merely related an inferential opinion based upon observed fact. 
She testified that in her opinion the workers' compensation settlement influenced the decision to
disqualify Alma Martinez from employment. Merrill did not testify that it was the sole cause of
Martinez's termination but only that it played a part in her ultimate medical disqualification.

 Ethicon argues that Merrill's lay opinion testimony was inadmissible upon two
bases: (1) the Texas courts have long held that a witness cannot testify to the state of mind of
another person, and (2) Merrill's opinion regarding Ethicon's action is nothing more than rank
speculation since her personal knowledge went only to Dr. Taylor's actions, and Loudamy, not
Dr. Taylor, made the ultimate decision to terminate Martinez. Regarding the first basis, Ethicon
cites us to a plethora of case authority for the proposition that, one person cannot testify to
another's state of mind. Most of the cases Ethicon cites in support of this argument predate the
adoption of Rule 701 in Texas, (2) and the others are not on point. (3) 

 Our review of the case law leads us to conclude that Texas courts have consistently
held that opinion or inference testimony about another's state of mind, rationally based on the
witness's perception, is admissible under Rule 701. See, e.g. Campbell v. Groves, 774 S.W.2d
717, 719 (Tex. App. 1989, writ denied) (in will probate case, witness permitted to testify that
testator was of unsound mind based upon personal observations of hallucinations and persecution
complex); Chase Commercial Corp. v. Datapoint Corp., 774 S.W.2d 359, 368 (Tex. App. 1989,
no writ) (fraud case where lay opinion testimony of Datapoint employee held admissible); see also
Jones v. Jones, 804 S.W.2d 623, 627 (Tex. App. 1991, no writ); Thomas v. State, 774 S.W.2d
26, 28-29 (Tex. App. 1989, no pet.). As Wigmore observed:


 The argument has been made that, because we cannot see, hear, or feel the state
of another person's mind, therefore testimony to another person's state of mind is
based on merely conjectural and therefore inadequate data. This argument is
finical enough; and it proves too much, for if valid it would forbid the jury to find
a verdict upon the supposed state of a person's mind. If they are required and
allowed to find such a fact, it is not too much to hear such testimony from a
witness who has observed the person exhibiting in his conduct the operations of his
mind.



2 J. Wigmore, Wigmore on Evidence § 661 (J. Chadbourn rev. 1979).

 We next consider Ethicon's second contention under this point, that because
Loudamy, not Dr. Taylor, made the final decision to discharge Martinez, Merrill's opinion is
highly speculative and hence inadmissible. What this argument overlooks is the basis for
Martinez's discharge. Alma Martinez was medically discharged based upon a report authored by
Dr. Taylor and drafted and typed by the witness, Pat Merrill. Thus, although Loudamy may have
had the final decision-making power regarding personnel at the Ethicon plant, Pat Merrill had
direct personal knowledge regarding the foundation for that decision. The record is clear that
Loudamy was not a medical doctor. Dr. Taylor, as the plant's medical doctor, obviously supplied
the medical opinion that Loudamy utilized to medically disqualify Martinez. Since Merrill had
direct knowledge of a pattern of conduct regarding Dr. Taylor's medical disqualifications, we
conclude that the trial court did not abuse its discretion in ruling that her lay opinion testimony
was admissible. 


 2. Cumulative Testimony

 Even if the admission of the complained-of testimony were erroneous, we would
hold its introduction harmless. Pat Merrill testified to all of her personal observations without
objection. She was allowed to "opine" that what made Dr. Taylor particularly angry about
workers' compensation claims was that the claimants "were awarded money at a hearing." 
Evidence was received that Ethicon had discriminated against at least one other former employee
who had received a workers' compensation award. Loudamy himself admitted that at the post-Industrial Accident Board meeting one of the primary considerations in placing Martinez on
medical disability was the Industrial Accident Board award. Because the record includes other
testimony to support the inference that Ethicon discharged Martinez due to the workers'
compensation settlement, Pat Merrill's testimony in this regard was cumulative of other admitted
testimony and its admission was harmless. See McInnes v. Yamaha Motor Corp., U.S.A., 673
S.W.2d 185, 188 (Tex. 1984), cert. denied, 469 U.S. 1107 (1985). Ethicon's first point of error
is without merit and is accordingly overruled.


Violation Article 8307c, Texas Workers' Compensation Act



 In its second point of error, Ethicon attacks the legal and factual sufficiency of the
jury's liability finding that Ethicon discharged Martinez in contravention to article 8307c of the
Texas Workers' Compensation Act. The standards of review are well settled for reviewing a "no
evidence" challenge. We consider only the evidence and reasonable inferences drawn therefrom
which, when viewed in their most favorable light, support the jury's finding, and we must
disregard all evidence and inferences to the contrary. Alm v. Aluminum Co. of Am., 717 S.W.2d
588, 593 (Tex. 1986); Garza v. Alviar, 395 S.W.2d 821, 823 (Tex. 1965). Any probative
evidence supporting the finding is sufficient to overrule the point of error. See also Robert
Calvert, "No Evidence" and "Insufficient Evidence" Points of Error, 38 Tex. L. Rev. 361, 364
(1960).

 We will sustain a challenge that the finding is factually insufficient to support the
verdict only if, after reviewing the entire record, the evidence is too weak to support the finding
or the finding is so contrary to the overwhelming weight of the evidence as to be clearly wrong
and unjust. See, e.g., Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986); In re King's Estate, 244
S.W.2d 660, 661 (Tex. 1951); William Powers, Jr. and Jack Ratliff, Another Look at "No
Evidence" and "Insufficient Evidence," Tex. L. Rev. 515, 525 (1991).

 The legislative purpose of article 8307c is to "protect persons who are entitled to
benefits under the workers' compensation law and to prevent them from being discharged by
reason of taking steps to collect such benefits." Carnation Co. v. Borner, 610 S.W.2d 450, 453
(Tex. 1980). The statute does not require Martinez to establish that she was discharged "solely"
because she took steps to collect workers' compensation benefits. She has a cause of action if she
was discharged for obtaining an award at the Industrial Accident Board conference, even though
it might not be the only reason for her discharge. In order to prevail, she need only show that her
claim contributed to Ethicon's decision to discharge her. Mid-South Bottling Co. v. Cigainero,
799 S.W.2d 385, 390 (Tex. App. 1990, writ denied); Azar Nut Co. v. Caille, 720 S.W.2d 685,
687 (Tex. App. 1986) aff'd, 734 S.W.2d 667 (Tex. 1987); Santex, Inc. v. Cunningham, 618
S.W.2d 557, 559 (Tex. Civ. App. 1981, no writ).

 Ethicon defended this lawsuit on the theory that Martinez could no longer work in
a repetitive-motion job without wrist pain and possible risk of re-injury. Ethicon alleged at trial
that there were no other jobs available for Martinez. It argued that the company was on the horns
of a dilemma and medical discharge was the only reasonable alternative available.

 Martinez, on the other hand, urges that the evidence reflected a company bias
against employees who received a workers' compensation lump-sum award. Martinez introduced
testimony that, although not required to be there, Dr. Taylor attended Martinez's workers'
compensation hearing. Further, Dr. Taylor admitted that one of his duties was to reduce workers'
compensation costs. Immediately upon his return to the plant, Dr. Taylor participated in the
meeting between Loudamy, Thurston, and Wilson and "discussed Alma Martinez'[sic] problem." 
Dr. Taylor said that Martinez had been hurting since she returned to work. He quoted her as
saying that she was having a great deal of pain, and that her wrist was bothering her even at the
time of the hearing. (4) Dr. Taylor recommended that Martinez be medically discharged without an
additional examination and in the face of medical reports from Dr. Reid, the operating physician,
that Martinez could return to the performance of her regular work. Finally, Dr. Taylor's medical
records indicate that Martinez's medical condition would be reviewed at a later date, but, even
though requested by Martinez, re-examination or medical re-evaluation was never attempted.

 This case was hotly contested and the testimony was often disputed and conflicting. 
When the jury is presented with conflicting evidence it may choose to believe one witness and
disbelieve others or it may resolve inconsistencies in the testimony of any witness. McGalliard
v. Kuhlmann, 722 S.W.2d 694, 697 (Tex. 1986); Mid-South Bottling Co., 799 S.W.2d at 389. 
As the trier of fact, the jury is the sole judge of the credibility of witnesses and the weight to be
attached to their testimony. Rego Co. v. Brannon, 682 S.W.2d 677, 680 (Tex. App. 1984, writ
ref'd n.r.e). 

 Although there was evidence from which the jury could have believed Ethicon's
assertions, there was also substantial evidence to support the jury's finding that Ethicon terminated
Martinez because she filed a workers' compensation claim and received a monetary award. From
our review of the evidence in conjunction with the appellate cases regarding sufficient causal
connection between a workers' compensation claim and a discharge, we conclude that there was
legally and factually sufficient evidence to support the jury's liability finding. (5)

 Ethicon's second point of error is overruled.



Exemplary Damages



 In its final point of error, Ethicon challenges the jury findings permitting the
recovery of exemplary damages, which it contends are excessive in amount. The jury found in
response to Question Three of the court's charge that Ethicon acted willfully or maliciously in
discharging Martinez. It awarded Martinez $163,500 in actual damages and, in Question Four,
$900,000 in exemplary damages. Ethicon attacks both jury answers. (6)

 We note at the outset that Ethicon does not challenge by oral argument or in its
brief the evidence to support the jury finding that Ethicon acted "willfully." Since Ethicon did
not object to Question Three as submitted and does not on appeal attack that it acted "willfully,"
we conclude that it has waived error. See Tex. R. Civ. P. Ann. 272, 274 (Supp. 1992). 
However, even if we assume that the point were properly preserved, we find it to be without
merit. There is ample evidence in this record to support the jury's finding that Ethicon acted with
malice. To recount just some of the conduct in issue:


 * Plaintiff met her production goals in the week before she was discharged as
medically disqualified, but apart from Dr. Taylor's discharge memo, Ethicon had
no documentation to support its decision.


 * Dr. Taylor never re-examined Plaintiff's wrist before he made the decision to
declare her medically disqualified.


 * Dr. Taylor testified in his deposition that Martinez might have come back to
work too early, and Loudamy, who had the discretion to place her back on medical
leave for another week or so to see if she got better, made the decision not to do
so.


 * Ethicon ignored two separate medical reports from Dr. Reid stating that he had
examined her after the layoff and that she was fully recovered and able to return
to work.


 * The only other person placed on medical disability in the past five years was
also the only other person who received a monetary award from the Industrial
Accident Board.



We conclude there was ample evidence of malice.

 Next, Ethicon contends that the amount of the exemplary damages is grossly
excessive. An award of exemplary damages rests largely in the discretion of the jury and will not
be set aside as excessive unless the amount is so large as to indicate that it is the result of passion,
prejudice, or corruption, or that the evidence has been disregarded. Crutcher-Rolfs-Cummings,
Inc. v. Ballard, 540 S.W.2d 380, 389, (Tex. Civ. App. 1976, writ ref'd n.r.e.) cert. denied, 433
U.S. 910 (1977). When reviewing an exemplary damage award, we consider:


 1. the nature of the wrong;

 2. the character of the conduct involved;

 3. the degree of culpability of the wrongdoer;

 4. the situation and sensibilities of the parties concerned; and

 5. the extent to which such conduct offends a public sense of justice and
propriety.



Alamo Nat'l Bank v. Kraus, 616 S.W.2d 908, 910 (Tex. 1981). While exemplary damages must
be reasonably proportioned to actual damages, there is no set rule of ratio between the amount of
actual and exemplary damages that will be considered reasonable. Beacon Nat'l Ins. Co. v.
Reynolds, 799 S.W.2d 390, 398 (Tex. App. 1990, writ denied); Aetna Casualty and Sur. Co. v.
Joseph, 769 S.W.2d 603, 607 (Tex. App. 1989, no writ). The ratio of exemplary to actual
damages here was 5.50 to 1. In Donnel v. Lara, 703 S.W.2d 257, 262 (Tex. App. 1985, writ
ref'd n.r.e.), the court approved a ratio of 2250 to 1; in Beacon National Insurance Co., 799
S.W.2d at 398, the court approved a ratio of 28 to 1; and in Wal Mart Stores, Inc. v. Kee, 743
S.W.2d 296 (Tex. App. 1987, no writ), an article 8307c case in which the facts do not appear as
aggravated as these facts, the court of appeals affirmed a 5.56 to 1 ratio of exemplary to actual
damages.

 Based upon a review of all of the evidence in the record in light of the Kraus
factors, as well as the reasonableness of the ratio of exemplary to actual damages, we conclude
that the exemplary damages awarded by the jury are not excessive. Ethicon's third point of error
is overruled.



CONCLUSION


 Finding no error, we affirm the judgment of the district court.


 

 Mack Kidd, Justice

[Before Chief Justice Carroll, Justices Jones and Kidd]

Affirmed

Filed: August 26, 1992

[Publish]
1.   A paraffin treatment is a type of heat therapy. The patient immerses the injured part of the
body in a small tub of warm melted wax for approximately fifteen minutes to ease the pain.
2.  Lehman v. Corpus Christi Nat'l Bank, 668 S.W.2d 687 (Tex. 1984) (pre-Rule 701 authority;
disallowing evidence of the mere opinion of W.F.L.'s attorney); Byrd v. Southwest Multi-Copy,
Inc., 693 S.W.2d 704 (Tex. App. 1985, no writ) (summary judgment affidavit case, decided under
pre-Rule 701 authority); Sharpe v. Lomas & Nettleton Fin. Corp., 601 S.W.2d 55 (Tex. Civ.
App. 1980, writ ref'd n.r.e.) (pre-Rule 701 summary judgment affidavit case; statements of
personal beliefs, without more, were not facts); Combs v. Fantastic Homes, Inc., 584 S.W.2d 340
(Tex. Civ. App. 1979), writ ref'd n.r.e., 596 S.W.2d 502 (Tex. 1979) (pre-Rule 701 summary
judgment affidavit case; no facts to support opinions); Varon v. Richardson Professional
Properties, Inc., 583 S.W.2d 917 (Tex. Civ. App. 1979, no writ) (pre-Rule 701 summary
judgment affidavit case; no facts to support opinions); Taylor v. Lewis, 553 S.W.2d 153 (Tex.
Civ. App. 1977, writ ref'd n.r.e.) (pre-Rule 701 discovery case; unanswered requests for
admissions as to admitting parties; state of mind properly deemed not admitted); Medina v.
Sherrod, 391 S.W.2d 66 (Tex. Civ. App. 1965, no writ) (pre-Rule 701 summary judgment
affidavit case; no presentment of any facts known to plaintiff that might circumstantially reveal
defendant's intent at the time the promise was made). 
3. Connell v. Bank of Boston, 924 F.2d 1169 (1st Cir. 1991), cert. denied, ___U.S.___, 111
S.Ct. 2828 (1991) (summary judgment affidavit case; no facts buttressing broad assertion or
explaining how witness learned of the Bank's intentions to eliminate seniors); Visser v. Packer
Eng'g Assocs, Inc., 924 F.2d 655 (7th Cir. 1991) (summary judgment affidavit case; no primary
facts reported from which a reasonable person in the witnesses' position would infer that one of
Packer's motives was to deprive Visser of most of his pension); Mitroff v. Xomox Corp., 797 F.2d
271 (6th Cir. 1986) (the admission of opinion testimony that there was a pattern of age
discrimination at Xomox was error because "Mitroff provided no information as to whether these
opinions were rationally based on McAllister's perceptions"); Peters v. Gifford-Hill & Co., 794
S.W.2d 856 (Tex. App. 1990, writ denied) (non-Rule 701 case; defendant's testimony regarding
the plaintiff's sales representative was not evidence); and Bushell v. Dean, 781 S.W.2d 652 (Tex.
App. 1989), rev'd 803 S.W.2d 711 (Tex. 1991) ("profile" testimony not admissible under rule
that third person transactions are not admissible to prove the transaction at issue).
4.   The evidence is disputed whether Martinez was experiencing pain at the time of the
Industrial Accident Board hearing. She testified at trial that while she described her pain prior
to surgery, she was not in pain at the time of the hearing and that she did not testify in the hearing
that she was then in pain. The parties stipulated that Martinez met her production goals during
the week after she returned to work and before Ethicon medically discharged her. The last time
Dr. Taylor examined Martinez's wrist, on the Thursday before the hearing, he found that her
"[w]rist appears normal. Scar well healed. No swelling. Alma states she hurt only Tuesday,
very minor discomfort Wednesday and today." Dr. Taylor and Dr. Reid both testified that it is
relatively common to have a little pain when returning to work after surgery.
5. The following cases found sufficient evidence to establish a causal connection between an
employee's workers' compensation claim and subsequent discharge: Carnation Co., 610 S.W.2d
at 451 (worker returned to work with doctor's release but was medically terminated two days after
Industrial Accident Board settlement); Murray Corp. v. Brooks, 600 S.W.2d 897, 900-03 (Tex.
Civ. App. 1980, writ ref'd n.r.e.) (worker on medical leave for back injury filed claim and hired
attorney, management would not extend medical leave and discharged worker; increased insurance
rate from worker's claims "was a consideration"; other employee filing substantial claim also laid
off and not recalled to work); Santex, Inc., 618 S.W.2d at 559-60 (manager criticized worker for
filing claim; company president attended prehearing conference on claim becoming openly angry
at the award); Azar Nut Co., 734 S.W.2d at 668 (supervisor falsified injury report and became
angry when claim filed; company officers refused to review medical reports); VanTran Electric
Corp. v. Thomas, 708 S.W.2d 527, 530-31 (Tex. App. 1986, writ ref'd n.r.e.) (report from
worker's doctor and attorney upset supervisor who promised to punish worker, see that he never
got another job; worker's discharge partly based on absences while under doctor's care;
supervisor opposed unemployment claim; and supervisor told a new employer worker was totally
disabled); General Electric Co. v. Kunze, 747 S.W.2d 826, 830 (Tex. App. 1987, writ denied)
(supervisor became upset when worker mentioned hiring attorney to help on claim and
subsequently reviewed performance as unacceptable); Mid-South Bottling Co., 799 S.W.2d at 388-89 (supervisor's deposition contradicted trial testimony that he did not know of injury when he
fired worker for failure to report to work). 
6.   Although the point of error attacks both issues, Ethicon makes no argument in this court as
to the legal and factual sufficiency of the evidence to support the actual damages.