Mark C. WILSON D/B/A MCW Investments, Inc., Appellant,

v.

JOHN FRANTZ COMPANY, Appellee.

No. 01–86–0253–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Nov. 20, 1986.

Rehearing Denied, Dec. 30, 1986.

Ronald E. Tigner, Childs, Fortenbach, Beck & Guyton, Houston, for appellee.

Joseph A. Kornfeld, Hiller, Kornfeld & Falik, Houston, for appellant.

Before DUGGAN, LEVY and HOYT, JJ.

## OPINION

DUGGAN, Justice.

This is an appeal from the entry of a take-nothing judgment notwithstanding a jury verdict in favor of the appellant.

The appellant, Mark C. Wilson, d/b/a MCW Investments, Inc., a mortgage loan broker, brought suit against the appellee, John Frantz Company, a real estate developer, seeking a commission that Wilson alleges was due because he timely delivered approval of a loan on terms acceptable to Frantz. In response to special issues, a jury found that (1) the terms of the loan commitment were mutually acceptable to the appellee, Frantz, and the lender, and (2) loan approval was delivered within a "21 working days" deadline imposed by Frantz. On Frantz's motion, the trial court disregarded the jury's answer to special issue number two, found that there was no evidence that loan approval had been delivered within 21 working days, and rendered a take-nothing judgment as to Wilson, notwithstanding the verdict in his favor.

In early 1981, Frantz sought a loan to finance the construction of an industrial warehouse in Houston, and Wilson agreed to assist Frantz in procuring such a loan. After contacting approximately one dozen mortgage companies, Wilson received an expression of interest from Herb Hedley of BA Mortgage of Texas ("BA"). On January 28, 1981, Frantz completed an application for a loan from BA in the amount of $4,250,000. Hedley and Frantz signed that application, and Frantz inserted below his signature a typewritten notation indicating that a $10,000 good faith deposit he had made would be refunded to him "[i]f loan approval [was] not delivered in twenty-one (21) days...."

On that same day, Wilson and Frantz signed a document ("the commission agreement") that stated, "[i]n the event BA issues a commitment according to the terms and conditions embodied in their application or any others mutually acceptable to [BA and Frantz]," Wilson would earn "a fee equal to one percent (1%) of the loan amount ($42,500) payable at closing." Wilson and Frantz made no other written agreements.

The January 28 documents provide the backdrop for the conflicts central to this appeal. The parties agree that Wilson and BA were granted exclusive rights for a period of 21 working days to deliver loan

approval to Frantz. They agree on little else.

Wilson, Hedley, and Hedley's superior at BA, Kent Graeve, all testified that Frantz understood that BA expected him to contribute his own funds to the warehouse project, in an amount equal to 10% of either the project's cost or the amount of the loan. Their testimony indicated that Frantz was reluctant to undertake a loan on such terms, but that a February 19, 1981 meeting produced a compromise agreement in which Frantz guaranteed the required funds, though not in the form of cash. Instead, Frantz agreed to tender a letter of credit to cover one-half of his commitment and, for the other one-half, to assign to BA the proceeds from the pending sale of another warehouse he owned. BA's loan commitment, dated March 2, 1981, reflected those terms.

Frantz denied that he ever agreed to the terms expressed in the March 2 loan commitment. He testified that he attended the February 19 meeting, but that he did not recall consenting to contribute his own equity to the project. He testified that the March 2 commitment was not acceptable to him because of the equity provisions, and also because of several other terms that were in the commitment, but which were never discussed with him.

The parties were also in dispute as to the timeliness of the delivery of loan approval by Wilson. Hedley and Wilson testified that after the loan cleared the first of two BA approval committees, Hedley mailed a letter indicating final approval to Wilson, with instructions to deliver the letter to Frantz after actual final approval. On February 27, Hedley called Wilson and notified him of actual final approval. Wilson testified that he then took three steps to deliver approval to Frantz: (1) he called Frantz's office and left a message with Frantz's answering service that the loan had been approved; (2) he called Frantz's home, learned that Frantz was not there, and left no message because a child had answered the telephone; and (3) he then went to a post office and mailed the letter at 7:30 p.m. on a Friday evening.

Frantz argues that these actions did not constitute "delivery" of loan approval. He testified that he had contemplated "delivery" as being the physical delivery of the details of the loan commitment, and that February 27 was the last day that Wilson had an exclusive right to produce a loan. Frantz testified that he did not notify Wilson in the days before February 27, 1981, that he would require tender of a loan commitment on that day.

Wilson testified that he personally delivered a copy of BA's loan commitment to Frantz's office on Monday, March 2, 1981, at which time Frantz told him that he had obtained financing from a different lender. Frantz did not complain of late delivery at that time. Frantz could not recall discussing the second loan on that date, but admitted that he had signed a loan application with First Mortgage Company of Texas, Inc. on February 26, 1981. The First Mortgage application led to a loan commitment from Fidelity Mutual Life Insurance Company that differed significantly from the structure of the BA loan.

The main issues in this appeal concern the terms of the performance required of Wilson pursuant to his agreement with Frantz. The parties do not dispute the existence of a contract, but do disagree on the meaning of the terms of their contract and, consequently, on whether the appellant's performance satisfied those terms. Because the charge to the jury was based on the contractual language, and no definitions of the terms were requested or submitted, the parties' contentions regarding the state of the evidence in support of the jury's findings reflect their inability to agree on the meaning of their contractual language.

In his first three points of error, Wilson argues that the trial court erred in rendering judgment in favor of Frantz notwithstanding the verdict, in disregarding the jury's answer to special issue number two, and in refusing to render judgment in favor of Wilson.

Special issue number two inquired, "Do you find from a preponderance of the evidence that loan approval was delivered to John Frantz Company within 21 working days?" Appellee Frantz did not object to the submission of this issue, nor did he tender a request for a definition of any terms contained in the issue. The jury answered "Yes" to the special issue. In rendering judgment notwithstanding the verdict, the trial court based its action on its conclusion "that there is no evidence of probative force to sustain the finding of the jury to Special Issue Number 2 that loan approval was delivered to John Frantz Company within twenty-one (21) working days."

The rendition of judgment notwithstanding the verdict is proper only when there is *no* evidence to support the jury's findings. *Williams v. Bennett,* 610 S.W.2d 144, 145 (Tex.1980). In analyzing such a "no evidence" point, this Court must review the record in the light most favorable to the jury findings, considering only the evidence and the inferences supporting such findings, and rejecting the evidence and the inferences contrary to them. *Id.* Because there was some evidence that loan approval was delivered within 21 working days, the trial court erred in setting aside the jury's answer to special issue number two.

The parties did not reduce their entire agreement to one written instrument; at trial, both parties relied on the theory that their contract was composed of the commission agreement, the loan application, and their parol agreement that Wilson had an exclusive right to procure and deliver a loan for a period of "21 working days," a term derived from the loan application. Because their contract was not explicit, the parties disagree on the interpretation of the term "delivery of loan approval." The trial court heard extrinsic testimony on the meaning of this ambiguous term.

John Frantz testified that he chose the language in his loan application requiring that "loan approval" be "delivered" in "21 working days." Although he asserted that he meant, by those words, physical delivery of a loan commitment, his interpretation conflicted with the testimony of other witnesses. Mark Wilson testified that he understood "delivery" meant "advising ... that the loan has been received." Herb Hedley testified that loan approval may be communicated by mail or by telephone, and that there is no single "normal means of approving a loan." Albert Clay, the appellant's expert witness, testified that "loan approval" is "being notified the loan has been approved."

The testimony indicates that the parties did not agree to be bound by a special definition of the phrase "delivery of loan approval." Accordingly, no special definition of the term was requested by either party when the court prepared its charge to the jury. If the appellee, Frantz, considered that a special or technical definition of the term was required, it was his burden to tender a substantially correct definition of the term to the trial court at the time the charge to the jury was prepared. Tex. R.Civ.P. 279. Absent an instruction on such a special or technical definition, the jury was free to consider the ordinary meaning of the phrase in the light of the evidence presented.

The appellee admitted that Post Oak Answering Service was authorized to receive messages for the John Frantz Company. It was within the province of the jury to deduce from this admission that loan approval was "delivered" by Mark Wilson's telephone call on February 27 by applying to the word "deliver" one of its ordinary definitions: "to make known to another: COMMUNICATE." Webster's Third International Dictionary 597 (1976 ed.).

Where language used in a contract is ambiguous, the agreement will be construed most strictly against the party who chose the language in an effort to reach a result consistent with the intent of the parties. *Republic National Bank v. Northwest National Bank,* 578 S.W.2d 109, 115 (Tex.1978). Wilson communicated loan approval in a diligent fashion and personally delivered a copy of the loan commitment on March 2, a Monday, the next working day.

Because the loan approval process was complete within 21 working days, it would be unreasonable to accept Frantz's construction that he contemplated physical delivery of the loan commitment on a Friday night, especially when he never communicated this construction to Wilson until after the fact. This Court notes that during the week in controversy, the parties discussed the pending loan approval, but that Frantz never told Wilson that he expected physical delivery before Monday morning, March 2, 1981. A party's actions that reasonably lead another party to believe that strict compliance with a deadline will not be required may constitute an effective waiver of a time provision in a contract. *Seismic & Digital Concepts, Inc. v. Digital Resources Corp.*, 590 S.W.2d 718, 721 (Tex. Civ.App.—Houston [1st Dist.] 1979, no writ).

■ Whether a party to a contract has "performed" is a question of fact for the jury. *See Briargrove Shopping Center v. Vilar, Inc.*, 647 S.W.2d 329, 333 (Tex.App. —Houston [1st Dist.] 1982, no writ) (whether breach occurred is a fact issue). Wilson presented evidence that final approval of the loan was a mere "rubber stamp," and that Frantz knew by February 23 or 24 that approval was assured; that BA Mortgage notified Wilson, who was Frantz's mortgage broker, that final approval was given on February 27; that Hedley's approval letter was mailed to Frantz on the evening of the 27th; and that Frantz's answering service received Wilson's message on that same Friday. The jury could reasonably infer from this evidence that Wilson performed his duties under his commission agreement.

Wilson's first three points of error are sustained.

In his fourth point of error, Wilson complains because the trial court refused to submit special issues inquiring whether Frantz anticipatorily repudiated his commission agreement with Wilson.

Although Frantz testified that he signed an application for a loan from a second borrower on February 26, 1981, he stated that his action did not violate his exclusive arrangement with Wilson because the second loan was a long term "permanent" loan that he planned to use to pay off the first loan, which was for a shorter term. Wilson and Clay testified that the two loans were incompatible and that both loans would not be obtained simultaneously as a matter of normal business practice.

■ It is undisputed that Frantz never told Wilson that he had undertaken a second loan, or that he would not accept the first loan, at any time before their March 2 meeting. However, the doctrine of anticipatory breach is applicable only where there is an unequivocal renunciation of the contract by the defaulting party. *McKenzie v. Farr*, 541 S.W.2d 879, 882 (Tex.Civ. App.—Beaumont 1976, writ ref'd n.r.e.). Because Frantz did not renounce the contract until the time his performance was due, the doctrine of anticipatory repudiation does not apply in this case. The trial court properly refused the appellant's requested issues.

The appellant's fourth point of error is overruled.

By his first cross-point of error, Frantz urges that the trial court erred in refusing to disregard the jury's answer to special issue number one because the evidence conclusively established that the mortgage commitment issued by BA was not acceptable to Frantz. Frantz notes that the commitment contained an equity provision absent from the loan application that he signed, and that a number of other terms in the commitment were not discussed during the negotiation process.

The parties' commission agreement guaranteed payment to Wilson if he procured a loan from BA on "terms and conditions embodied in their application or any others mutually acceptable to you both...." Wilson presented evidence that Frantz orally agreed to the equity provisions of the final commitment, and that the terms that were not negotiated were standard boilerplate terms usually present in similar loan commitments.

■ Viewing the evidence in the light most favorable to the appellant, who obtained an affirmative jury finding, we find that there is some evidence that supports the jury's answer to special issue number one. Although Frantz does not challenge the factual sufficiency of the evidence supporting the jury's answer, the evidence is factually sufficient because the finding was not "so contrary to the great weight and preponderance of the evidence as to be clearly wrong and unjust. . . ." Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 Texas L.Rev. 361, 367–68 (1960). Frantz presented only his own testimony that the terms were unacceptable in his rebuttal of the contrary testimony of Wilson, Hedley, and Clay, the expert witness.

Frantz's first cross-point of error is overruled.

Frantz's second cross-point states that the trial court erred because it refused to admit into evidence two documents that indicated the settlement of litigation between Frantz and BA Mortgage. The documents reflected the dismissal with prejudice of Frantz's suit against BA because BA had refunded to Frantz his $10,000 good faith deposit.

Frantz offered the documents at trial under the hearsay exception for declarations against interest. Tex.R.Evid. 803(24). The instruments, a motion and an order dismissing the litigation with prejudice, included a recital that BA's loan commitment was based on "terms differing from plaintiff's application," and were signed by BA's attorney in that cause. The trial court cited the rule of evidence providing for the exclusion of otherwise relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." Tex.R.Evid. 403.

Frantz contends that the documents were material in that they directly relate to the issue of whether the conditions set forth in the commission agreement were satisfied. He argues that the jury might have answered special issue number one differently if the jurors had known that the terms of the commitment varied from the application and that BA Mortgage had refunded to Frantz his $10,000 good faith deposit.

■ If there was any error in excluding the evidence proffered by the appellee, the error was harmless because other evidence that was admitted revealed the facts evidenced by the dismissal documents. *Carroll Instrument Co. v. B.W.B. Controls, Inc.*, 677 S.W.2d 654, 660 (Tex.App.—Houston [1st Dist.] 1984, no writ). BA's employee, Herb Hedley, testified that Frantz's claim against BA was settled for $10,000 because BA believed that its attorney's fees in litigating the dispute would exceed that amount. The fact that the terms of the loan commitment varied from the application was undisputed by Wilson, who presented evidence that the additional terms were standard agreements and were approved orally by Frantz. In view of Hedley's testimony that the dismissal was approved by BA for purposes of compromise and settlement, the trial court acted properly in excluding the documents. Tex.R.Evid. 408. The documents were never offered for the purpose of impeaching Hedley's testimony.

Frantz's second cross-point is overruled.

Because there was some evidence to support the jury's answer to special issue number two, the trial court should have rendered judgment on the verdict in favor of the appellant, Wilson. The judgment of the trial court is reversed, and judgment is rendered for the appellant in the sum of $42,500 in damages and $21,000 in attorney's fees, as awarded by the jury, together with prejudgment and post-judgment interest at the legal rate. All costs are assessed against the appellee.