**ETHICON, INC., Appellant,**

v.

**Alma MARTINEZ, Appellee.**

**No. 3–91–285–CV.**

Court of Appeals of Texas, Austin.

Aug. 26, 1992.

Steven W. Sloan, Dallas, for appellant.

Kevin Glasheen, Lubbock, for appellee.

Before CARROLL, C.J., and JONES and KIDD, JJ.

KIDD, Justice.

Following a prehearing conference at the Industrial Accident Board and a $12,000 workers' compensation award, Alma Martinez, a ten year employee, was discharged by her employer, Ethicon, Inc. Martinez sued Ethicon for wrongful discharge in violation of article 8307c of the workers' compensation statute, which prohibits an employer from discharging an employee for filing a workers' compensation claim or receiving workers' compensation benefits. *See* Tex.Rev.Civ.Stat.Ann. art. 8307c (Supp. 1992). A jury found that Ethicon had violated the Texas Workers' Compensation Act and awarded Martinez actual and exemplary damages. The district court rendered judgment for Martinez and Ethicon appeals. We affirm the judgment of the district court.

## THE CONTROVERSY

Ethicon employed Alma Martinez for ten years as a channel swagger. Ethicon makes sutures, and a channel swagger puts the needle and the suture together. It is a repetitive-motion job, as are most of the jobs at the plant. Martinez's job required her to make the same wrist movement over 7000 times per day. Repetitive-motion injuries are common at Ethicon. Martinez eventually developed pain in her wrist.

In September 1987, Martinez went to Dr. Stanley Taylor, the plant's Medical Director, complaining of pain in her left wrist that she had developed at work. After examining and interviewing Martinez, Dr. Taylor referred her to Dr. Thomas Reid, an orthopedic surgeon. Dr. Reid diagnosed Martinez as suffering from de Quervain's syndrome, a constriction of the sheath surrounding a tendon in the wrist causing inflammation and pain. De Quervain's syndrome is associated with repetitive-motion trauma. Dr. Reid performed surgery on Martinez's left wrist to alleviate the pain and released her to return to work in October 1987.

Later, Martinez noticed a problem at a different place in the same wrist. She reported the problem to Ethicon's medical department and was again referred to Dr. Reid. She saw Dr. Reid in January 1988; he felt a small nodule and suspected a ganglion cyst. She saw him again in March, when she described pain radiating up into her forearm. In April she reported that, when placed on a less strenuous job, she did not have problems, but the pain recurred when she returned to her old job. Dr. Reid saw her again in May, and in June he diagnosed a ganglion cyst.

Martinez had surgery to remove the cyst in July 1988. Ethicon placed her on medical leave from July 5 until November 28, 1988, when she returned to work for the last time. While she was on leave, the scar tissue began to bother her, and Dr. Reid removed the scar tissue on October 25th.

Martinez returned to work at Ethicon on Monday, November 28, 1988. On Tuesday, November 29th, she went to Ethicon's medical department, complaining of pain and swelling in her left wrist. The following day, Dr. Taylor prescribed a conservative course of therapy for Martinez: she was to undergo paraffin treatments three times a day,[1] wear a wristlet while working, and wear a thermal glove when she was not at work. Dr. Taylor saw Martinez again on Thursday, December 1, 1988. His report states, "Wrist appears normal. Scar well healed. No swelling. Alma states she hurt only Tuesday, very minor discomfort Wednesday and today. Getting paraffin. Given wristlet and thermal gloves. To wear gloves at all times except at work. Will recheck in a.m. S.K.T." Based upon his examination, Dr. Taylor concluded that Martinez was able to continue working with only minor discomfort.

On the following Monday, December 5th, Alma Martinez attended an Industrial Accident Board prehearing conference, which forms the crux of the present controversy. Martinez had filed a workers' compensation claim in conjunction with her wrist injury and subsequent surgery. She was represented by an attorney. Although not required to, Dr. Taylor accompanied Edwin Thurston and Mike Wilson, both Ethicon Safety Department employees, to the prehearing conference. The parties dispute the statements made at the informal prehearing conference concerning Martinez's continued pain and discomfort in her wrist. Regardless, the workers' compensation claim settled for $12,000.

It was the practice of Gary Loudamy, the plant's Personnel Manager, to hold a debriefing after Industrial Accident Board proceedings. Loudamy supervised Dr. Taylor, Thurston, and Wilson. Thus, when Dr. Taylor, Thurston, and Wilson returned to the plant, they went directly to Loudamy's office to report the results of the prehearing conference.

During that meeting, Dr. Taylor told Loudamy what Martinez and her attorney had said about Martinez continuing to experience pain in her left wrist. Dr. Taylor recommended to Loudamy that Martinez be placed on medical disqualification, which is tantamount to discharge since the employee's injuries are considered so serious that she will never be expected to return to work.

Pat Merrill, Dr. Taylor's physician's assistant, testified that after his meeting with Loudamy, Dr. Taylor stormed into the medical department, slammed the door behind him, and exclaimed, "Damn it. Alma got $12,000 and I'm not going to let her back in the plant." Dr. Taylor had done the same thing once before when another employee received an award from the Industrial Accident Board. Dr. Taylor proceeded to draft the medical disqualification memo that Ethicon used as the basis for discharging Martinez. Mrs. Merrill testified that in her opinion, based upon what she observed, the Industrial Accident Board award influenced Ethicon's decision to discharge Martinez.

---

1. A paraffin treatment is a type of heat therapy. The patient immerses the injured part of the body in a small tub of warm melted wax for approximately fifteen minutes to ease the pain.

That evening, Dr. Taylor called Alma Martinez at home and told her not to clock in the next day, but to report directly to the medical department because she would not be able to work. When Martinez reported the next morning, she was immediately taken upstairs to the management offices and given a copy of Dr. Taylor's memo saying she was medically disqualified. Martinez argued that she could work and that she had done her regular work the previous week. Martinez protested that she had been with the company ten years. The Ethicon personnel officials had a security guard escort her out of the plant.

Two days later, on December 8th, Dr. Reid again examined Martinez's wrist and said it appeared quite well. He gave her two doctor's statements saying that she had recovered nicely from her wrist surgery and that she should be capable of performing her normal work activities. Martinez tried to submit these statements to Ethicon. Some months later, she talked to Dr. Taylor, asking to be recalled, or at least given a medical review. Dr. Taylor promised to see what he could do, but she never heard from him again.

Alma Martinez sued Ethicon, alleging that the company had violated article 8307c of the Texas Workers' Compensation Act entitled "Protection of claimants from discrimination by employers" which provides in pertinent part:

> Section 1. No person may discharge or in any other manner discriminate against any employee because the employee has in good faith filed a claim, hired a lawyer to represent him in a claim, instituted, or caused to be instituted, in good faith, any proceeding under the Texas Workers' Compensation Act, or has testified or is about to testify in any such proceeding.

Following a trial, the jury found that Ethicon discharged Martinez in violation of the Texas Workers' Compensation Act, that her actual damages were $163,500, that Ethicon acted willfully or maliciously in discharging her, and that exemplary damages in the amount of $900,000 should be assessed against Ethicon for its failure to act fairly and in good faith. The trial court rendered judgment on the verdict. Ethicon duly perfected this appeal alleging three points of error: (1) the trial court erred in admitting the lay-opinion testimony of the witness, Pat Merrill; (2) the evidence was legally and factually insufficient to support the jury finding that Ethicon discharged Martinez in violation of the Texas Workers' Compensation Act; and (3) the evidence was legally and factually insufficient to support the jury finding that Ethicon acted willfully or maliciously and the exemplary damages awarded were excessive.

## DISCUSSION

### Lay Opinion Testimony

One of Martinez's key witnesses was Pat Merrill, who at the time of Martinez's discharge was a medical assistant to Dr. Taylor. Merrill testified to her personal observations of Dr. Taylor's conduct following the Industrial Accident Board prehearing conference and his subsequent plant meeting with Loudamy. Merrill recounted Dr. Taylor's angry response to Martinez's Industrial Accident Board award: "Damn it. Alma got $12,000 and I'm not going to let her back in the plant." She described assisting Dr. Taylor in drafting the medical discharge memo. She overheard Dr. Taylor's telephone conversation that evening with Alma Martinez wherein he told her to report directly to the medical department rather than to her job because she was unable to work. Merrill also testified that Dr. Taylor had similarly disqualified another Ethicon worker who received a workers' compensation settlement. At the conclusion of Merrill's direct examination she answered the following question asked by Martinez's counsel:

> Q. Mrs. Merrill, do you have an opinion as to whether Ethicon's decision to disqualify Alma Martinez from employment was influenced in any way by the fact that she had obtained a

settlement at the Industrial Accident Board hearing that day?

A. Yes.

Q. What is that opinion?

A. My opinion is, it was influenced by the fact that she got a settlement.

In its first point of error, Ethicon contends that the admission of this question and answer constitutes reversible error on the part of the trial judge. We reject this argument because (1) the testimony was proper and admissible, and (2) the testimony was, at best, cumulative of other unobjected-to testimony, and therefore was harmless.

### 1. Admissibility of Testimony

Martinez contends Pat Merrill's opinion that the Industrial Accident Board settlement award influenced Ethicon's decision was properly admitted under Tex.R.Civ. Evid.Ann. 701 (Pamph.1992). Rule 701, titled "Opinion Testimony by Lay Witnesses," provides:

> If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue.

Rule 701 provides for the admissibility of opinions or inferences of a witness not testifying as an expert. Prior to testifying to an opinion or inference, the witness must first lay a foundation establishing personal knowledge of the facts which form the basis of the opinion or inference. The opinion or inference of the witness must be rationally based on the witness's perception, meaning only that it must be one which a person could normally form from observed facts. Finally, the testimony of a lay witness in the form of an opinion or inference must be helpful to a clear understanding of the witness's testimony or to the determination of a fact in issue. M.H. Graham, *Handbook of Federal Evidence*, § 701.1 at 602–04 (3d ed. 1991). *See also*

Steven Goode, Olin Guy Wellborn, III & Michael Sharlot, *Guide to the Texas Rules of Evidence: Civil and Criminal,* 33 Texas Practice § 701.2 (1988); 3 J.B. Weinstein and M.A. Berger, *Weinstein's Evidence,* # 701[02] (1990).

■ The admission or exclusion of evidence during the trial is left to the sound discretion of the trial court. *See Syndex Corp. v. Dean,* 820 S.W.2d 869, 873 (Tex. App.1991, writ denied). We review the admitted evidence using the abuse of discretion standard. *Steenbergen v. Ford Motor Co.,* 814 S.W.2d 755, 760 (Tex.App.1991, writ denied). Martinez contends that pursuant to Rule 701, the trial court did not abuse its discretion in admitting the question and answer in issue. We agree. Pat Merrill's opinion was directly based upon her personal observations of Dr. Taylor's conduct. She also testified to a prior related incident where Dr. Taylor medically discharged another Ethicon employee under the same or similar circumstances. Finally, Merrill merely related an inferential opinion based upon observed fact. She testified that in her *opinion* the workers' compensation settlement *influenced* the decision to disqualify Alma Martinez from employment. Merrill did not testify that it was the *sole* cause of Martinez's termination but only that it played a part in her ultimate medical disqualification.

Ethicon argues that Merrill's lay opinion testimony was inadmissible upon two bases: (1) the Texas courts have long held that a witness cannot testify to the state of mind of another person, and (2) Merrill's opinion regarding Ethicon's action is nothing more than rank speculation since her personal knowledge went only to Dr. Taylor's actions, and Loudamy, not Dr. Taylor, made the ultimate decision to terminate Martinez. Regarding the first basis, Ethicon cites us to a plethora of case authority for the proposition that, one person cannot testify to another's state of mind. Most of the cases Ethicon cites in support of this argument predate the adoption of Rule 701

in Texas,[2] and the others are not on point.[3]

■ Our review of the case law leads us to conclude that Texas courts have consistently held that opinion or inference testimony about another's state of mind, rationally based on the witness's perception, is admissible under Rule 701. *See, e.g., Campbell v. Groves,* 774 S.W.2d 717, 719 (Tex.App. 1989, writ denied) (in will probate case, witness permitted to testify that testator was of unsound mind based upon personal observations of hallucinations and persecution complex); *Chase Commercial Corp. v. Datapoint Corp.,* 774 S.W.2d 359, 368 (Tex.App.1989, no writ) (fraud case where lay opinion testimony of Datapoint employee held admissible); *see also Jones v. Jones,* 804 S.W.2d 623, 627 (Tex.App.1991, no writ); *Thomas v. State,* 774 S.W.2d 26, 28–29 (Tex.App.1989, no pet.). As Wigmore observed:

> The argument has been made that, because we cannot see, hear, or feel the state of another person's mind, therefore testimony to another person's state of mind is based on merely conjectural and therefore inadequate data. This argument is finical enough; and it proves too much, for if valid it would forbid the jury to find a verdict upon the supposed state of a person's mind. If they are required and allowed to find such a fact, it is not too much to hear such testimony from a witness who has observed the person exhibiting in his conduct the operations of his mind.

2 J. Wigmore, *Wigmore on Evidence* § 661 (J. Chadbourn rev. 1979).

■ We next consider Ethicon's second contention under this point, that because Loudamy, not Dr. Taylor, made the final decision to discharge Martinez, Merrill's opinion is highly speculative and hence inadmissible. What this argument overlooks is the *basis* for Martinez's discharge. Alma Martinez was *medically discharged* based upon a report authored by Dr. Taylor and drafted and typed by the witness, Pat Merrill. Thus, although Loudamy may have had the final decision-making power regarding personnel at the Ethicon plant, Pat Merrill had direct personal knowledge regarding the foundation for that decision. The record is clear that Loudamy was not a medical doctor. Dr. Taylor, as the plant's medical doctor, obviously supplied the medical opinion that Loudamy utilized to medically disqualify Martinez. Since Mer-

---

**2.** *Lehman v. Corpus Christi Nat'l Bank,* 668 S.W.2d 687 (Tex.1984) (pre-Rule 701 authority; disallowing evidence of the mere opinion of W.F.L.'s attorney); *Byrd v. Southwest Multi-Copy, Inc.,* 693 S.W.2d 704 (Tex.App.1985, no writ) (summary judgment affidavit case, decided under pre-Rule 701 authority); *Sharpe v. Lomas & Nettleton Fin. Corp.,* 601 S.W.2d 55 (Tex.Civ.App.1980, writ ref'd n.r.e.) (pre-Rule 701 summary judgment affidavit case; statements of personal beliefs, without more, were not facts); *Combs v. Fantastic Homes, Inc.,* 584 S.W.2d 340 (Tex.Civ.App.1979), *writ ref'd n.r.e.,* 596 S.W.2d 502 (Tex.1979) (pre-Rule 701 summary judgment affidavit case; no facts to support opinions); *Varon v. Richardson Professional Properties, Inc.,* 583 S.W.2d 917 (Tex.Civ.App. 1979, no writ) (pre-Rule 701 summary judgment affidavit case; no facts to support opinions); *Taylor v. Lewis,* 553 S.W.2d 153 (Tex.Civ.App. 1977, writ ref'd n.r.e.) (pre-Rule 701 discovery case; unanswered requests for admissions as to admitting parties; state of mind properly deemed not admitted); *Medina v. Sherrod,* 391 S.W.2d 66 (Tex.Civ.App.1965, no writ) (pre-Rule 701 summary judgment affidavit case; no presentment of any facts known to plaintiff that might circumstantially reveal defendant's intent at the time the promise was made).

**3.** *Connell v. Bank of Boston,* 924 F.2d 1169 (1st Cir.1991), *cert. denied,* —— U.S. ——, 111 S.Ct. 2828, 115 L.Ed.2d 997 (1991) (summary judgment affidavit case; no facts buttressing broad assertion or explaining how witness learned of the Bank's intentions to eliminate seniors); *Visser v. Packer Eng'g Assocs, Inc.,* 924 F.2d 655 (7th Cir.1991) (summary judgment affidavit case; no primary facts reported from which a reasonable person in the witnesses' position would infer that one of Packer's motives was to deprive Visser of most of his pension); *Mitroff v. Xomox Corp.,* 797 F.2d 271 (6th Cir.1986) (the admission of opinion testimony that there was a pattern of age discrimination at Xomox was error because "Mitroff provided no information as to whether these opinions were rationally based on McAllister's perceptions"); *Peters v. Gifford-Hill & Co.,* 794 S.W.2d 856 (Tex.App. 1990, writ denied) (non-Rule 701 case; defendant's testimony regarding the plaintiff's sales representative was not evidence); and *Bushell v. Dean,* 781 S.W.2d 652 (Tex.App.1989), *rev'd* 803 S.W.2d 711 (Tex.1991) ("profile" testimony not admissible under rule that third person transactions are not admissible to prove the transaction at issue).

rill had direct knowledge of a pattern of conduct regarding Dr. Taylor's medical disqualifications, we conclude that the trial court did not abuse its discretion in ruling that her lay opinion testimony was admissible.

### 2. Cumulative Testimony

■ Even if the admission of the complained-of testimony were erroneous, we would hold its introduction harmless. Pat Merrill testified to all of her personal observations without objection. She was allowed to "opine" that what made Dr. Taylor particularly angry about workers' compensation claims was that the claimants "were awarded money at a hearing." Evidence was received that Ethicon had discriminated against at least one other former employee who had received a workers' compensation award. Loudamy himself admitted that at the post-Industrial Accident Board meeting one of the primary considerations in placing Martinez on medical disability was the Industrial Accident Board award. Because the record includes other testimony to support the inference that Ethicon discharged Martinez due to the workers' compensation settlement, Pat Merrill's testimony in this regard was cumulative of other admitted testimony and its admission was harmless. *See McInnes v. Yamaha Motor Corp., U.S.A.,* 673 S.W.2d 185, 188 (Tex.1984), *cert. denied,* 469 U.S. 1107, 105 S.Ct. 782, 83 L.Ed.2d 777 (1985). Ethicon's first point of error is without merit and is accordingly overruled.

### Violation Article 8307c, Texas Workers' Compensation Act

■ In its second point of error, Ethicon attacks the legal and factual sufficiency of the jury's liability finding that Ethicon discharged Martinez in contravention to article 8307c of the Texas Workers' Compensation Act. The standards of review are well settled for reviewing a "no evidence" challenge. We consider only the evidence and reasonable inferences drawn therefrom which, when viewed in their most favorable light, support the jury's finding, and we must disregard all evidence and inferences to the contrary. *Alm v. Aluminum Co. of Am.,* 717 S.W.2d 588, 593 (Tex.1986); *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex. 1965). Any probative evidence supporting the finding is sufficient to overrule the point of error. *See also* Robert Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error,* 38 Tex.L.Rev. 361, 364 (1960).

We will sustain a challenge that the finding is factually insufficient to support the verdict only if, after reviewing the entire record, the evidence is too weak to support the finding or the finding is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See, e.g., Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986); *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661 (1951); William Powers, Jr. and Jack Ratliff, *Another Look at "No Evidence" and "Insufficient Evidence,"* Tex.L.Rev. 515, 525 (1991).

■ The legislative purpose of article 8307c is to "protect persons who are entitled to benefits under the workers' compensation law and to prevent them from being discharged by reason of taking steps to collect such benefits." *Carnation Co. v. Borner,* 610 S.W.2d 450, 453 (Tex.1980). The statute does not require Martinez to establish that she was discharged "solely" because she took steps to collect workers' compensation benefits. She has a cause of action if she was discharged for obtaining an award at the Industrial Accident Board conference, even though it might not be the only reason for her discharge. In order to prevail, she need only show that her claim contributed to Ethicon's decision to discharge her. *Mid–South Bottling Co. v. Cigainero,* 799 S.W.2d 385, 390 (Tex.App. 1990, writ denied); *Azar Nut Co. v. Caille,* 720 S.W.2d 685, 687 (Tex.App.1986) *aff'd,* 734 S.W.2d 667 (Tex.1987); *Santex, Inc. v. Cunningham,* 618 S.W.2d 557, 559 (Tex. Civ.App.1981, no writ).

Ethicon defended this lawsuit on the theory that Martinez could no longer work in a repetitive-motion job without wrist pain and possible risk of re-injury. Ethicon alleged at trial that there were no other jobs available for Martinez. It argued that the

company was on the horns of a dilemma and medical discharge was the only reasonable alternative available.

Martinez, on the other hand, urges that the evidence reflected a company bias against employees who received a workers' compensation lump-sum award. Martinez introduced testimony that, although not required to be there, Dr. Taylor attended Martinez's workers' compensation hearing. Further, Dr. Taylor admitted that one of his duties was to reduce workers' compensation costs. Immediately upon his return to the plant, Dr. Taylor participated in the meeting between Loudamy, Thurston, and Wilson and "discussed Alma Martinez' [sic] problem." Dr. Taylor said that Martinez had been hurting since she returned to work. He quoted her as saying that she was having a great deal of pain, and that her wrist was bothering her even at the time of the hearing.[4] Dr. Taylor recommended that Martinez be medically discharged without an additional examination and in the face of medical reports from Dr. Reid, the operating physician, that Martinez could return to the performance of her regular work. Finally, Dr. Taylor's medical records indicate that Martinez's medical condition would be reviewed at a later date, but, even though requested by Martinez, re-examination or medical re-evaluation was never attempted.

■ This case was hotly contested and the testimony was often disputed and conflicting. When the jury is presented with conflicting evidence it may choose to believe one witness and disbelieve others or it may resolve inconsistencies in the testimony of any witness. *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex.1986); *Mid–South Bottling Co.*, 799 S.W.2d at 389. As the trier of fact, the jury is the sole judge of the credibility of witnesses and the weight to be attached to their testimony. *Rego Co. v. Brannon*, 682 S.W.2d 677, 680 (Tex.App.1984, writ ref'd n.r.e.).

■ Although there was evidence from which the jury could have believed Ethicon's assertions, there was also substantial evidence to support the jury's finding that Ethicon terminated Martinez because she filed a workers' compensation claim and received a monetary award. From our review of the evidence in conjunction with the appellate cases regarding sufficient causal connection between a workers' compensation claim and a discharge, we conclude that there was legally and factually sufficient evidence to support the jury's liability finding.[5]

4. The evidence is disputed whether Martinez was experiencing pain at the time of the Industrial Accident Board hearing. She testified at trial that while she described her pain prior to surgery, she was not in pain at the time of the hearing and that she did not testify in the hearing that she was then in pain. The parties stipulated that Martinez met her production goals during the week after she returned to work and before Ethicon medically discharged her. The last time Dr. Taylor examined Martinez's wrist, on the Thursday before the hearing, he found that her "[w]rist appears normal. Scar well healed. No swelling. Alma states she hurt only Tuesday, very minor discomfort Wednesday and today." Dr. Taylor and Dr. Reid both testified that it is relatively common to have a little pain when returning to work after surgery.

5. The following cases found sufficient evidence to establish a causal connection between an employee's workers' compensation claim and subsequent discharge: *Carnation Co.*, 610 S.W.2d at 451 (worker returned to work with doctor's release but was medically terminated two days after Industrial Accident Board settlement); *Murray Corp. v. Brooks*, 600 S.W.2d 897, 900–03 (Tex.Civ.App.1980, writ ref'd n.r.e.) (worker on medical leave for back injury filed claim and hired attorney, management would not extend medical leave and discharged worker; increased insurance rate from worker's claims "was a consideration"; other employee filing substantial claim also laid off and not recalled to work); *Santex, Inc.*, 618 S.W.2d at 559–60 (manager criticized worker for filing claim; company president attended prehearing conference on claim becoming openly angry at the award); *Azar Nut Co.*, 734 S.W.2d at 668 (supervisor falsified injury report and became angry when claim filed; company officers refused to review medical reports); *VanTran Electric Corp. v. Thomas*, 708 S.W.2d 527, 530–31 (Tex.App.1986, writ ref'd n.r.e.) (report from worker's doctor and attorney upset supervisor who promised to punish worker, see that he never got another job; worker's discharge partly based on absences while under doctor's care; supervisor opposed unemployment claim; and supervisor told a new employer worker was totally disabled); *General Electric Co. v. Kunze*,

Ethicon's second point of error is overruled.

### Exemplary Damages

In its final point of error, Ethicon challenges the jury findings permitting the recovery of exemplary damages, which it contends are excessive in amount. The jury found in response to Question Three of the court's charge that Ethicon acted willfully or maliciously in discharging Martinez. It awarded Martinez $163,500 in actual damages and, in Question Four, $900,000 in exemplary damages. Ethicon attacks both jury answers.[6]

■ We note at the outset that Ethicon does not challenge by oral argument or in its brief the evidence to support the jury finding that Ethicon acted "willfully." Since Ethicon did not object to Question Three as submitted and does not on appeal attack that it acted "willfully," we conclude that it has waived error. *See* Tex.R.Civ. P.Ann. 272, 274 (Supp.1992). However, even if we assume that the point were properly preserved, we find it to be without merit. There is ample evidence in this record to support the jury's finding that Ethicon acted with malice. To recount just some of the conduct in issue:

* Plaintiff met her production goals in the week before she was discharged as medically disqualified, but apart from Dr. Taylor's discharge memo, Ethicon had no documentation to support its decision.

* Dr. Taylor never re-examined Plaintiff's wrist before he made the decision to declare her medically disqualified.

* Dr. Taylor testified in his deposition that Martinez might have come back to work too early, and Loudamy, who had the discretion to place her back on medical leave for another week or so to see if she got better, made the decision not to do so.

* Ethicon ignored two separate medical reports from Dr. Reid stating that he had examined her *after* the layoff and that she was fully recovered and able to return to work.

* The only other person placed on medical disability in the past five years was also the only other person who received a monetary award from the Industrial Accident Board.

We conclude there was ample evidence of malice.

■ Next, Ethicon contends that the amount of the exemplary damages is grossly excessive. An award of exemplary damages rests largely in the discretion of the jury and will not be set aside as excessive unless the amount is so large as to indicate that it is the result of passion, prejudice, or corruption, or that the evidence has been disregarded. *Crutcher–Rolfs–Cummings, Inc. v. Ballard,* 540 S.W.2d 380, 389 (Tex. Civ.App.1976, writ ref'd n.r.e.) *cert. denied,* 433 U.S. 910, 97 S.Ct. 2978, 53 L.Ed.2d 1095 (1977). When reviewing an exemplary damage award, we consider:

1. the nature of the wrong;
2. the character of the conduct involved;
3. the degree of culpability of the wrongdoer;
4. the situation and sensibilities of the parties concerned; and
5. the extent to which such conduct offends a public sense of justice and propriety.

*Alamo Nat'l Bank v. Kraus,* 616 S.W.2d 908, 910 (Tex.1981). While exemplary damages must be reasonably proportioned to actual damages, there is no set rule of ratio between the amount of actual and exemplary damages that will be considered reasonable. *Beacon Nat'l Ins. Co. v. Reynolds,* 799 S.W.2d 390, 398 (Tex.App.1990, writ denied); *Aetna Casualty and Sur. Co. v.*

---

747 S.W.2d 826, 830 (Tex.App.1987, writ denied) (supervisor became upset when worker mentioned hiring attorney to help on claim and subsequently reviewed performance as unacceptable); *Mid–South Bottling Co.,* 799 S.W.2d at 388–89 (supervisor's deposition contradicted trial testimony that he did not know of injury when he fired worker for failure to report to work).

**6.** Although the point of error attacks both issues, Ethicon makes no argument in this court as to the legal and factual sufficiency of the evidence to support the actual damages.

*Joseph,* 769 S.W.2d 603, 607 (Tex.App.1989, no writ). The ratio of exemplary to actual damages here was 5.50 to 1. In *Donnel v. Lara,* 703 S.W.2d 257, 262 (Tex.App.1985, writ ref'd n.r.e.), the court approved a ratio of 2250 to 1; in *Beacon National Insurance Co.,* 799 S.W.2d at 398, the court approved a ratio of 28 to 1; and in *Wal Mart Stores, Inc. v. Kee,* 743 S.W.2d 296 (Tex.App.1987, no writ), an article 8307c case in which the facts do not appear as aggravated as these facts, the court of appeals affirmed a 5.56 to 1 ratio of exemplary to actual damages.

 Based upon a review of all of the evidence in the record in light of the *Kraus* factors, as well as the reasonableness of the ratio of exemplary to actual damages, we conclude that the exemplary damages awarded by the jury are not excessive. Ethicon's third point of error is overruled.

## CONCLUSION

Finding no error, we affirm the judgment of the district court.