TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-99-00714-CV






Robert D. Oler, Appellant



v.



B-A Homes, Inc., Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT


NO. 96-15369, HONORABLE JOSEPH H. HART, JUDGE PRESIDING 







 Robert D. Oler appeals from an adverse jury verdict in favor of B-A Homes, Inc. 
We must determine whether a buyer breached its contract with a seller when the buyer terminated
based upon the inability to agree to a form of the subdivision plat. Because we conclude that the
contract allowed termination both upon the parties' failure to agree to a form of the subdivision
plat, as well as after the receipt of the final city-approved plat, the buyer did not breach the
contract. We affirm the trial court judgment.


Background


 On November 15, 1995, Oler and B-A Homes entered into a contract ("1995
contract") for the purchase and sale of sixty-nine single-family lots on an undeveloped tract of land
in Travis County called the North Shoal Creek Estates ("Estates"). Oler did not then own the
tract, but had a contract to purchase it. The contract with B-A Homes required Oler to obtain a
plat and construct the street and utility infrastructure for the subdivision. B-A Homes agreed to
purchase the platted lots for $26,500 each. 

 After the execution of the 1995 contract, Oler discovered a problem with the tract's 
storm water drainage. Because neighboring land around the Estates did not have adequate
drainage, the detention facility for the Estates had to be greatly expanded. The expansion reduced
the number of available buildable lots from sixty-nine to fifty-three, changed the street
configuration within the subdivision, and resulted in substantial delay and expense. Although 
Oler's purchase contract with the Estates' owner expired, he renegotiated a new contract with
price concessions in light of the drainage issue. In addition, Oler renegotiated with B-A Homes,
obtaining a price increase per lot to $28,000 each. Oler and B-A Homes entered a revised
purchase and sale contract for fifty-one lots on August 14, 1996 ("1996 contract"). The 1996
contract contained a proposed plat ("August 14, 1996 plat") showing an enlarged storm water
facility and the elimination of one of the two entrances to the subdivision.

 The 1996 contract contained the following section which is central to the parties'
dispute on appeal:


ARTICLE IV


TITLE MATTERS



4.1 The parties hereto agree that the Lots shall be conveyed free and clear of all
liens and encumbrances of every kind and character except: . . . (c) a subdivision
plat and restrictive covenants covering the Residential Tract in form and content
agreed upon by Seller and Buyer within thirty (30) days after the date upon which
Seller delivers to Purchaser a final City approved plat and a proposed set of
restrictive covenants (collectively, the "Subdivision Plat and Restrictions"). If Seller
and Buyer are unable to agree upon a reasonable form of Subdivision Plat and
Restrictions then either party will have the right to terminate this Contract. In the
event of such termination, the Earnest Money will be returned to Buyer and
thereafter neither party will have any further rights, remedies or obligations
hereunder. . . . Additionally, Buyer agrees that Buyer will not unreasonably
withhold its approval of the Subdivision Plat and Restrictions. If Buyer does not
terminate this Contract within thirty (30) days after the date upon which Seller has
submitted to Buyer the final City approved Subdivision Plat and proposed
Restrictions, then Buyer will be deemed to have approved the final City approved
Subdivision Plat and proposed Restrictions and to have waived Buyer's right of
termination under this Section 4.1.



 After Oler and B-A Homes executed the 1996 contract, the City of Austin ("City")
requested Oler to add a second point of ingress and egress to the subdivision for emergency access
purposes. As a result, the storm water facility had to be rotated and placed along the western edge
of the property rather than the southern edge. Oler prepared a new plat ("August 28, 1996 plat")
incorporating the City's request and furnished it to B-A Homes on August 28, 1996. On
September 23, Oler's attorney sent B-A Homes a proposed amendment to the 1996 contract, which
included the August 28, 1996 plat and proposed several amendments to the 1996 contract. Among
others, Oler proposed that the parties agree and approve the August 28, 1996 subdivision plat,
agree to his proposed restrictive covenants, and waive the right to terminate the contract as
provided in section 4.1.

 On October 3, Henry Broesche, the owner of B-A Homes, orally terminated the
1996 contract and confirmed his company's termination in writing by letter dated October 7. 
Although B-A Homes terminated the contract, Broesche and Oler continued to negotiate the
purchase of the lots, although such purchase did not come to fruition. Oler eventually sold the lots
to David Weekly Homes. Following the termination, B-A Homes sought the return of its $50,000
earnest money deposit. On December 26, 1996, Oler sued B-A Homes alleging breach of contract
and promissory estoppel. B-A Homes counterclaimed for the return of its earnest money deposit.

 The jury found that B-A Homes did not fail to comply with the 1996 contract and
that Oler did not substantially rely to his detriment on post-termination promises made by
Broesche. The trial court signed a judgment for B-A Homes for the recovery of its earnest money
plus pre-judgment interest, attorneys' fees, post-judgment interest and costs. Oler raises two
issues on appeal.


Discussion


 In his first issue, Oler contends that B-A Homes' termination constituted an
anticipatory repudiation of the contract. Oler argues that the phrase "Subdivision Plat and
Restrictions" in section 4.1 means "a final City approved plat(1) and a proposed set of restrictive
covenants." Thus, until he delivered the final City approved plat to B-A Homes, B-A Homes had
no right to terminate. According to Oler, by terminating before its time to perform, B-A Homes
repudiated the contract.

 B-A Homes contends that Oler failed to plead, prove or argue anticipatory
repudiation and therefore waived it. B-A Homes argues that the phrase "Subdivision plat and
proposed restrictions" means a subdivision plat, not the final City-approved plat, and that the
contract allowed it to terminate because it did not agree to the revised plat submitted by Oler on
August 28, 1996. Our interpretation of the contract's termination rights begins with a
determination of the meaning of "Subdivision Plat and Restrictions."


Meaning of Section 4.1's "Subdivision Plat and Restrictions"

 Section 4.1 provides exceptions to the conveyance free and clear of encumbrances. 
According to section 4.1 "[t]he parties hereto agree that the Lots shall be conveyed free and clear
of all liens and encumbrances of every kind and character except: . . . (c) a subdivision plat and 
restrictive covenants covering the Residential Tract in form and content agreed upon by the Seller
and Buyer within thirty (30) days after the date upon which Seller delivers to Purchaser a final
City approved plat and a proposed set of restrictive covenants (collectively, the 'Subdivision Plat
and Restrictions')."

 Neither party argued that the contract is ambiguous. The construction of an
unambiguous contract presents a question of law for the court. Coker v. Coker, 650 S.W.2d 391,
393 (Tex. 1983). We give terms their plain, ordinary and generally accepted meanings, unless
the instrument shows them to have been used in a technical or different sense. Western Reserve
Life Ins. Co. v. Meadows, 152 Tex. 559, 261 S.W.2d 554, 557 (1953). We will give effect to the
intentions of the parties as expressed or apparent in the contract. City of Pinehurst v. Spooner
Addition Water Co., 432 S.W.2d 515, 518 (Tex. 1968). The contract alone is deemed to express
the intention of the parties because it is the objective, not subjective, intent that controls. Id. 
When interpreting a contract, we examine the entire agreement in an effort to harmonize and give
effect to all provisions of the contract so that none will be rendered meaningless. MCI Telecomm.
Corp. v. Texas Utils. Elec. Co., 995 S.W.2d 647, 652 (Tex. 1999).

 Under our reading of section 4.1, the language following "restrictive covenants" in
subsection (c) modifies and describes "restrictive covenants," not "subdivision plat." Subsection
(c) refers to two title exceptions: (1) a subdivision plat and (2) restrictive covenants. The
explanatory phrase after "restrictive covenants" in subsection (c) describes the procedure for
agreement on the restrictive covenants, not the procedure for agreement on the plat. The parties
must agree on a reasonable form of the subdivision plat to submit to the city for approval. The
contract requires that the buyer must not unreasonably withhold its approval of a plat. Once the
City approves the plat, the Seller provides the Buyer with the final City approved plat and with
a proposed set of restrictive covenants. Then, the parties have thirty days to agree on the form
and content of the restrictive covenants. Thus, the phrase "final City approved plat and a proposed
set of restrictive covenants" alone has no meaning other than to describe the procedure for
approving the restrictive covenants.

 To interpret "Subdivision Plat and Restrictions" as referring only to "a final City
approved plat and a proposed set of restrictive covenants," as Oler suggests, misconstrues
subsection (c), and fails to consider the distinction between a reasonable form of the plat and the
final city approved plat. Subsection (c) contemplates both a proposed plat and a final city
approved plat, and proposed restrictive covenants and final agreed upon restrictive covenants. We
agree with B-A Homes that "Subdivision Plat and Restrictive Covenants" means a proposed form
of the plat and the proposed restrictive covenants to be approved after receipt of the final city
approved plat. 


Anticipatory Repudiation of the Contract

 As stated earlier, Oler challenges the legal and factual sufficiency of the evidence
to support the jury's failure to find that B-A Homes repudiated the contract. B-A Homes alleges
Oler failed to plead and failed to request jury findings on the issue of anticipatory repudiation and
therefore waived this argument. We will assume without deciding that Oler properly pleaded and
preserved the issue of anticipatory repudiation.

 When reviewing a challenge to the legal sufficiency of the evidence by the party
with the burden of proof on a jury's failure to find, the appellant must show that no evidence
supports the failure to find and that the evidence conclusively establishes the desired finding as a
matter of law. Sterner v. Marathon Oil Co., 767 S.W.2d 686, 690 (Tex. 1989); Waring v.
Wommack, 945 S.W.2d 889, 893 (Tex. App.--Austin 1997, no writ). We must examine the
record for evidence supporting the jury's finding, ignoring all evidence to the contrary. Sterner, 
767 S.W.2d at 690. If there is no evidence to support the jury's finding, then the entire record
must be examined to see if the contrary proposition is established as a matter of law. Id. If the
contrary proposition is established conclusively by the evidence, the issue will be sustained. 
Meyerland Community Improvement Ass'n v. Temple, 700 S.W.2d 263, 267 (Tex. App.--Houston
[1st Dist.] 1985, writ ref'd n.r.e.).

 A challenge to the factual sufficiency of the evidence requires the party with the
burden of proof to establish that the non-finding is contrary to the great weight and preponderance
of the evidence. Croucher v. Croucher, 660 S.W.2d 55, 58 (Tex. 1983); Waring, 945 S.W.2d
at 893. A factual sufficiency point requires us to examine the entire record to determine if there
is some evidence to support the finding and then determine whether, in light of the entire record,
the finding is manifestly unjust. Traylor v. Goulding, 497 S.W.2d 944, 945 (Tex. 1973); Raw
Hide Oil & Gas, Inc. v. Maxus Exploration Co., 766 S.W.2d 264, 276 (Tex. App.--Amarillo
1988, writ denied). In considering great weight points complaining of the jury's failure to find
a fact, we are mindful that a jury was not convinced by a preponderance of the evidence. Herbert
v. Herbert, 754 S.W.2d 141, 144 (Tex. 1988). We may not reverse merely because we conclude
the evidence preponderates toward an affirmative answer. Id. We may only reverse if the great
weight of the evidence supports an affirmative answer. Id.

 The repudiation of a contract before the time for performance has arrived amounts
to a tender of breach of the entire contract and allows the injured party to immediately pursue an
action for damages. Murray v. Crest Constr., Inc., 900 S.W.2d 342, 344 (Tex. 1995). 
Repudiation consists of words or actions by a contracting party indicating that the party is not
going to perform in the future. Group Life & Health Ins. Co. v. Turner, 620 S.W.2d 670, 673
(Tex. Civ. App.--Dallas 1981, no writ). It is conduct that shows a fixed intention to abandon,
renounce and refuse to perform the contract. Group Life, 620 S.W.2d at 673. On the other hand,
a breach of contract occurs when a party fails or refuses to do something that it has promised to
do. Townewest Homeowners Ass'n, Inc. v. Warner Communication Inc., 826 S.W.2d 638, 640
(Tex. App.--Houston [14th Dist.] 1992, no writ); see also Restatement (Second) of Contracts
§ 235(2) (1981) (when performance of duty under contract is due, any non-performance is breach).
To constitute anticipatory repudiation, the party to the contract must have absolutely repudiated
the contract without just excuse causing damage to the plaintiff. Poe v. Hutchins, 737 S.W.2d
574, 578 (Tex. App.--Dallas 1987, writ ref'd n.r.e.).

 The determination of whether B-A Homes' conduct constituted a repudiation of the
contract depends on when the contract allows the parties to terminate. The contract provides that
"[i]f Seller and Buyer are unable to agree upon a reasonable form of Subdivision Plat and
Restrictions then either party will have the right to terminate this Contract." The contract further
provides that the Buyer may terminate "within thirty (30) days after the date upon which Seller has
submitted to Buyer the final City approved Subdivision Plat and proposed Restrictions. . . ." The
buyer's right to terminate is further restricted in that it "will not unreasonably withhold its
approval of the Subdivision Plat and Restrictions."

 Section 4.1 provides two points at which the contract may be terminated: (1) if the
parties are unable to agree upon a reasonable form of the plat; and (2) if within thirty days after
receipt of the final City approved plat the Buyer reasonably withholds its approval and terminates. 
When Oler delivered the August 28, 1996 plat to B-A Homes, B-A Homes' time to perform had
commenced. Pursuant to the contract, B-A Homes had to determine whether it would agree to the
August 28, 1996 plat as a "reasonable form," or terminate. B-A Homes chose to exercise its right
to terminate.

 By terminating the contract, B-A Homes did not abandon the contract before time
to perform. Rather, B-A Homes refused to perform when its performance was due. Because B-A
Homes did not renounce the contract until the time when its performance was due, the doctrine
of anticipatory repudiation does not apply. See Wilson v. John Frantz Co., 723 S.W.2d 189, 193
(Tex. App.--Houston [14th Dist.] 1986, writ ref'd n.r.e.). We overrule Oler's first issue.


Breach of Contract

 In his second issue, Oler contends that B-A Homes unreasonably withheld its
approval of the subdivision plat. Oler contends that the jury's failure to find that B-A Homes
breached the contract is against the great weight and preponderance of the evidence.(2) As stated
earlier, the contract obligated B-A Homes not to unreasonably withhold approval of the
subdivision plat and proposed restrictions. B-A Homes contends it complied with the contract's
termination provision and reasonably withheld its approval of the August 28, 1996 plat.

 The parties did not define the phrase "unreasonably withhold" in the contract, and
the trial court did not instruct the jury with regard to the phrase. Absent an instruction on a
special or technical definition, the jury is free to consider the ordinary meaning of a phrase in light
of the evidence presented. Wilson, 723 S.W.2d at 192. With conflicting evidence, the jury is free
to believe one witness and disbelieve all other witnesses. Ethicon, Inc. v. Martinez, 835 S.W.2d
826, 834 (Tex. App.--Austin 1992, writ denied). The jury is the sole judge of the credibility of
the witnesses and the weight to be given their testimony. Id. We will not disturb findings of
credibility. See In re Yarbrough, 719 S.W.2d 412, 415 (Tex. App.--Amarillo 1986, no writ). 
Because the appellate court is not the fact finder, it may not substitute its own judgment for that
of the trier of fact, even if a different answer could be reached on the evidence. Knox v. Taylor,
992 S.W.2d 40, 50 (Tex. App.--Houston [14th Dist.] 1999, no pet.). Because the jury found that
B-A Homes did not fail to comply with the contract, the jury implicitly found that B-A Homes did
not unreasonably withhold its approval of the plat.

 B-A Homes offered several grounds for terminating the contract. Among others,
Broesche testified that because of the change in market conditions he had concerns with the August
28, 1996 plat. He testified that houses on lots of the size in the Estates were not selling well at
that time. The contract did not prevent a change in market conditions as a grounds for
termination. The jury could have concluded that B-A Homes' reason for termination was based
on a change in the market conditions and that such explanation was not unreasonable.

 Having reviewed the record, we conclude that the jury's failure to find that B-A
Homes did not unreasonably withhold approval of the plat is not against the great weight and
preponderance of the evidence. We overrule Oler's second issue.


Conclusion


 Having overruled Oler's two issues on appeal, we affirm the trial court judgment. 



 

 Jan P. Patterson, Justice

Before Justices Jones, Yeakel and Patterson 

Affirmed

Filed: October 12, 2000

Do Not Publish

1. The City did not finally approve the plat until February 17, 1997.
2. See supra pp. 7-8 for the standard of review for a factual sufficiency challenge by the party
with the burden of proof on a jury's failure to find.


is Contract." The contract further
provides that the Buyer may terminate "within thirty (30) days after the date upon which Seller has
submitted to Buyer the final City approved Subdivision Plat and proposed Restrictions. . . ." The
buyer's right to terminate is further restricted in that it "will not unreasonably withhold its
approval of the Subdivision Plat and Restrictions."

 Section 4.1 provides two points at which the contract may be terminated: (1) if the
parties are unable to agree upon a reasonable form of the plat; and (2) if within thirty days after
receipt of the final City approved plat the Buyer reasonably withholds its approval and terminates. 
When Oler delivered the August 28, 1996 plat to B-A Homes, B-A Homes' time to perform had
commenced. Pursuant to the contract, B-A Homes had to determine whether it would agree to the
August 28, 1996 plat as a "reasonable form," or terminate. B-A Homes chose to exercise its right
to terminate.

 By terminating the contract, B-A Homes did not abandon the contract before time
to perform. Rather, B-A Homes refused to perform when its performance was due. Because B-A
Homes did not renounce the contract until the time when its performance was due, the doctrine
of anticipatory repudiation does not apply. See Wilson v. John Frantz Co., 723 S.W.2d 189, 193
(Tex. App.--Houston [14th Dist.] 1986, writ ref'd n.r.e.). We overrule Oler's first issue.


Breach of Contract

 In his second issue, Oler contends that B-A Homes unreasonably withheld its
approval of the subdivision plat. Oler contends that the jury's failure to find that B-A Homes
breached the contract is against the great weight and preponderance of the evidence.(2) As stated
earlier, the contract obligated B-A Homes not to unreasonably withhold approval of the
subdivision plat and proposed restrictions. B-A Homes contends it complied with the contract's
termination provision and reasonably withheld its approval of the August 28, 1996 plat.

 The parties did not define the phrase "unreasonably withhold" in the contract, and
the trial court did not instruct the jury with regard to the phrase. Absent an instruction on a
special or technical definition, the jury is free to consider the ordinary meaning of a phrase in light
of the evidence presented. Wilson, 723 S.W.2d at 192. With conflicting evidence, the jury is free
to believe one witness and disbelieve all other witnesses. Ethicon, Inc. v. Martinez, 835 S.W.2d
826, 834 (Tex. App.--Austin 1992, writ denied). The jury is the sole judge of the credibility of
the witnesses and the weight to be given their testimony. Id. We will not disturb findings of
credibility. See In re Yarbrough, 719 S.W.2d 412, 415 (Tex. App.--Amarillo 1986, no writ). 
Because the appellate court is not the fact finder, it may not substitute its own judgment for that
of the trier of fact, even if a different answer could be reached on the evidence. Knox v. Taylor,
992 S.W.2d 40, 50 (Tex. App.--Houston [14th Dist.] 1999, no pet.). Because the jury found that
B-A Homes did not fail to comply with the contract, the jury implicitly found that B-A Homes did
not unreasonably withhold its approval of the plat.

 B-A Homes offered several grounds for terminating the contract. Among others,
Broesche testified that because of the change in market conditions he had concerns with the August
28, 1996 plat. He testified that houses on lots of the size in the Estates were not selling well at
that time. The contract did not prevent a change in market conditions as a grounds for
termination. The jury could have concluded that B-A Homes' reason f